Edward M. GILBERT, Petitioner,

v.

UNITED STATES of America and the Attorney General of the United States, Respondents.

No. 62 CR. 664.

United States District Court
S. D. New York.

April 7, 1969.

Stanley J. Reiben, New York City, for petitioner.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, for respondents; Stephen F. Williams, Asst. U. S. Atty., of counsel.

OPINION

TENNEY, District Judge.

On September 24, 1964, the petitioner, Edward M. Gilbert, entered a plea of guilty to Counts One, Five and Seven of a fifteen-count indictment returned on June 28, 1962[1] in the United States District Court for the Southern District of New York. Judge Palmieri of this court sentenced petitioner on April 27, 1967 to a term of two years' imprisonment on each of the three counts, to be served concurrently. The execution of sentence on Count One was suspended, and petitioner was placed on unsupervised probation for a period of five years, to begin upon the expiration of the sentence imposed on Counts Five and Seven.

The first count of this indictment charged petitioner, in substance, with having used interstate and foreign wire communications in furtherance of a scheme to defraud E. L. Bruce Company (of which petitioner was president, a director and a controlling shareholder) of $1,953,000.00 in violation of 18 U.S.C. § 1343. Count Five charged petitioner, in substance, with having transported from New York to Paris a stolen check of Rhodes Enterprises, Inc. in the amount of $50,000.00, payable to Joseph Danon & Co., in violation of 18 U.S.C. § 2314. The seventh count charged petitioner, in substance, with having failed to file statements with the American Stock Exchange and the Securities and Exchange Commission relating to his ownership of E. L. Bruce Company common stock in May 1962, in violation of 15 U.S.C. §§ 78p(a), 78ff.

On February 29, 1967, petitioner pleaded guilty to Counts Five, Six and Ten of a twelve-count indictment returned on July 9, 1962 in the Court of General Sessions of the State of New York, County of New York.[2] Counts Five, Six and Ten of the New York State indictment charged petitioner with the theft from E. L. Bruce Company of checks totalling $1,117,000.00, drawn on the account of Bruce and payable to Rhodes Enterprises, Inc. on May 29, 1962, June 1, 1962 and June 6, 1962, respectively (grand larceny in the first degree). Appearing for sentence before Justice Culkin of the Supreme Court of the State of New York on May 8, 1967, petitioner argued that the basic wrongful acts which resulted in both the Federal and State indictments were the same, and that he had previously been prosecuted and sentenced by the Federal courts for this series of acts. The April 27, 1967 Minutes of Sentence (Palmieri, J.) were made available to the court. Justice Culkin observed that:

"Whatever happened in the Federal Court had to do with Federal law, acts committed against certain laws of the United States which he violated in the act of performing the larcenies committed here.

Technical violations of the law. Here it's a substantive crime."[3]

A term of imprisonment of two to four years on each count to run concurrently was imposed, and petitioner was remanded forthwith to begin service of this sentence.

Thereafter, petitioner moved before Judge Palmieri for a reduction of his Federal sentence or, in the alternative, for a modification of sentence to include a recommendation to the Attorney General to designate the State prison in which petitioner was then incarcerated as the place of confinement for his Federal sentence. On June 16, 1967, Judge Palmieri, in denying this motion, said:

"At the time of the sentence which was imposed by this Court on April 27, 1967, this Court was aware that there was an outstanding state indictment for misappropriation of funds to which the defendant had pleaded guilty and with respect to which sen-

---

1. Pg. 1. Indictment 62 Cr. 664.

2. Pg. 2. Indictment 2688-62.

3. Pg. 3. Minutes of Sentence, People v. Gilbert at 10 (May 8, 1967).

tence had not yet been imposed. It was not the intention of this Court to preempt in any way the functions of the New York State Supreme Court with respect to the disposition of the plea of guilty then pending before it. The defendant was sentenced in this Court for violations of specific federal statutes * * * and nothing in the proceedings before this Court justifies the conclusion that the functions of the state court were impinged upon in any way. Each court exercised a separate and distinct function with respect to separate and distinct crimes."[4]

After having served sixteen months in satisfaction of the New York State judgment, petitioner was released from State custody on September 24, 1968, at which time he began service of the Federal judgment.

Petitioner now moves this Court for an order under 28 U.S.C. § 1361 directing the Attorney General of the United States to credit him, pursuant to 18 U.S.C. § 3568, as amended by Section 4 of the Bail Reform Act of 1966,[5] with time spent in State custody which he alleges was in connection with the acts for which sentence was imposed by Judge Palmieri.

Title 18, United States Code, Section 3568, in pertinent part, provides:

> "The sentence of imprisonment of any persons convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. As used in this section, the term 'offense' means any criminal offense, other than

an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress."

Petitioner contends that the acts which formed the basis of the Federal prosecution were committed in order to effectuate or accomplish the theft which formed the basis of the State prosecution and that, therefore, insofar as intent and purpose are concerned, these series of acts are essentially the same. Accordingly, where the acts or offenses upon which the State prosecution is based are either factually related or chronologically or regionally intertwined with the acts or offenses upon which the Federal prosecution is based, there exists sufficient connection between these acts to entitle petitioner to credit toward service of his Federal sentence with the sixteen months spent in State custody pursuant to the valid sentence imposed upon his plea. In deference to Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) and Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), petitioner concedes that Section 3568, as amended, has not disturbed the power of each sovereign to prosecute or the inherent judicial right to impose separate sentences.[6] He argues, rather, that the "simplicity and sophistication" of the amendment to Section 3568 is achieved by effectively precluding double punishment in these circumstances by eliminating the inherent judicial power to execute consecutive sentences.

██ Applicable case law and legislative history not only fail to support petitioner's contentions but, on the contrary, compel the denial of his application.

---

4. Pg. 4. United States v. Gilbert, Criminal No. 62–664 (S.D.N.Y., filed June 16, 1967).

5. Pg. 4. Pub.L. No. 89–465, 80 Stat. 214, codified in 18 U.S.C. §§ 3041, 3141–3143, 3146–3152, 3568 (Supp. III 1965–67).

6. Pg. 6. United States v. Anderson, 279 F. Supp. 706, 707 (W.D.Okla.1968).

The petitioner in Bartkus v. Illinois, *supra,* was tried and acquitted in a Federal district court for robbery of a Federally-insured bank in violation of 18 U.S.C. § 2113. On substantially the same evidence, he was later tried and convicted in an Illinois State court for violation of an Illinois robbery statute. The United States Supreme Court, by a slim majority (5–4), found no violation of the due process clause of the Fourteenth Amendment to the Constitution in the second State prosecution. In Abbate v. United States, *supra,* decided by the Supreme Court that same day, the petitioners were indicted in an Illinois State court for violating a State statute making it a crime to conspire to injure or destroy the property of another. The petitioners entered pleas of guilty to the indictment and were each sentenced to three months' imprisonment. Thereafter, petitioners were indicted and convicted in a Federal district court for the *same acts* which provided the basis of the Illinois convictions. A majority of the Court (6–3) rejected the claim that the Federal prosecutions, based on the same acts as were the prior State convictions, placed petitioners twice in jeopardy contrary to the Fifth Amendment to the Constitution.

Whatever the present validity of *Bartkus* and *Abbate* regarding successive Federal and State prosecutions based upon the *same acts* it is well settled that offenses are not the same for purposes of the double jeopardy clause of the Fifth Amendment and the due process clause of the Fourteenth Amendment merely because they arise out of the same general course of criminal conduct or relate to and grow out of one transaction. United States v. Friedland, 391 F.2d 378, 381 (2d Cir. 1968); United States v. Bruni, 359 F.2d 807, 808–809 (7th Cir.), cert. denied, 385 U.S. 826, 87 S.Ct. 59, 17 L.Ed.2d 63 (1966); United States v. Kramer, 289 F.2d 909, 913 (2d Cir. 1961); Smith v. United States, 277 F.Supp. 850, 863–864 (D.Md. 1967). The test of identity of offenses,

as stated by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), is that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Offenses are the "same" only when the evidence required to support a conviction upon a Federal indictment would have been sufficient to warrant a conviction upon the State indictment. In other words, it is necessary to determine whether the same evidence would have been required to sustain the convictions of Gilbert under both the indictments here in question. United States v. Friedland, *supra*; Barnett v. Gladden, 375 F.2d 235, 238 (9th Cir. 1967); United States v. Gills, 357 F.2d 299, 301–302 (4th Cir.), cert. denied, 384 U.S. 933, 86 S.Ct. 1448, 16 L.Ed. 2d 532 (1966) ("It is settled that two indictments arising from the same act do not charge the same crime if each indictment requires proof of a fact not essential to the other.").

Applying this test in *Kramer, supra,* Judge Friendly, writing for the Court of Appeals for the Second Circuit, held that a prior Federal court acquittal on all eight counts of an indictment alleging substantive crimes arising from two post office burglaries did not make prosecution for conspiracy to commit these crimes double jeopardy, even though evidence of such an unlawful agreement was offered at the first trial. Similarly, the Court of Appeals found that acquittal of the charges in the first indictment would not support a plea of *autrefois acquit* on the charge of receiving, concealing and retaining stolen goods in violation of 18 U.S.C. § 641, though evidence of the possession of this stolen property after the post office burglaries had been offered at the former trial. In both cases, the Court found that proof of the charges in the second indictment would require something other than

that which would be necessary to sustain the charges in the first indictment.[7]

In Strother v. United States, 387 F.2d 385, 386 (5th Cir. 1967), cert. denied, 391 U.S. 971, 88 S.Ct. 2038, 20 L.Ed.2d 886 (1968), the Court rejected appellant's argument that his conviction entered upon his plea of guilty to two counts of an indictment amounted to double jeopardy in violation of the Fifth Amendment, in that the two counts of the indictment constituted but one offense. Therein, appellant was charged with transporting a stolen vehicle in interstate commerce in violation of 18 U.S.C. § 2312 and concealing that same vehicle in violation of 18 U.S.C. § 2313. See United States v. Adams, 281 U.S. 202, 50 S.Ct. 269, 74 L.Ed. 807 (1930); Yeaman v. United States, 326 F.2d 293, 294 (9th Cir. 1963); cf. Hill v. Holman, 255 F. Supp. 924, 925 (M.D.Ala.1966).

Almost three years prior to petitioner's plea of guilty to three counts of the New York State indictment which charged him with crimes he characterizes as essentially the same as those which formed the basis of the Federal indictment, the New York Court of Appeals in People v. Lo Cicero, 14 N.Y.2d 374, 251 N.Y. S.2d 953, 200 N.E.2d 622 (1964) construed Section 33 of the N.Y. Penal Law and Section 139 of the N.Y. Code of Cr. Proc. to prohibit a second prosecution in the courts of New York State for the same offense previously prosecuted in the Federal courts and for which there had been an acquittal or conviction. The defendant in that case, having been acquitted in a Federal court of the crime of obstructing by robbery the movement of goods in interstate commerce in violation of 18 U.S.C. § 1951, could not then, the Court held, be indicted in Kings County for the same robbery, nor for grand larceny in the first degree (theft of the contents of the truck), nor for assault in the second degree (with intent to commit the larceny and robbery). These counts of the State indictment were held to be legally constituent elements of the crime of robbery and, therefore, factually the same acts that formed the basis of the Federal indictment. The last count of the State indictment, however, charging the kidnapping of the driver of the hijacked truck, an act committed in furtherance of the robbery and which was both factually related and chronologically and regionally intertwined with the acts upon which the Federal prosecution was based, was held by the unanimous Court not to place appellant twice in jeopardy since the Federal prosecution did not include that separate offense.

Even assuming, *arguendo*, that the acts which formed the basis of the Federal prosecution were committed in order to effectuate or accomplish the theft which formed the basis of the State prosecution, this Court is satisfied that each indictment here in question requires proof of a fact or facts not essential to the other, and that, therefore, there exists no identity of offenses. Based upon this finding, the sole issue for determination is whether Congress intended by the 1966 amendment to Section 3568 to effectively preclude the execution of consecutive sentences imposed upon pleas of guilty to separate and distinct albeit "connected" crimes.

Title 18, United States Code, Section 3568, as amended in 1960, prior to its amendment in 1966 by Public Law 89–465 read as follows:

"The sentence of imprisonment of any person convicted of an offense in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence: PROVIDED That The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody prior to the imposition of sentence by the sentencing court for want of bail set for the offense under which

---

7. Pg. 9. Unlike United States v. Kramer, 289 F.2d 909, 913 (2d Cir. 1961), however, the instant application presents no question of collateral estoppel.

sentence was imposed where the statute requires the imposition of a minimum mandatory sentence."

The Court of Appeals for the District of Columbia in construing the 1960 amendment to Section 3568 in Stapf v. United States, 125 U.S.App.D.C. 100, 367 F.2d 326, 328–329 (1966) could perceive "no rational basis for a classification whereby credit for *presentence custody for lack of bail* is required as to minimum term offenses but is deniable as to the other, less serious offenses. \* \* \* The lack of justification for such a distinction," the Court noted, "is underscored by the legislative history of Section four of the Bail Reform Act of 1966. That section amends § 3568 to provide automatic credit to all defendants sentenced after its effective date. In recommending its adoption the Senate Committee on the Judiciary reported:

'Witnesses before both the subcommittees' 1964 and 1965 hearings were unanimous in finding no justification for (restricting § 3568 to minimum term offenses). \* \* \* It was observed that the crimes for which Congress has set minimum mandatory sentences are those which are considered so serious that judicial discretion in sentencing should be limited. It is ironic that persons accused of such serious crimes should be assured of receiving credit for pretrial custody, while those convicted of less serious crimes for which no minimum mandatory sentence is required have the benefit of no such assurance. (S.Rep. No. 750, 89th Cong., 1st Sess. 21 (1965).)'

*The 1966 act terminates the discrimination now before us. It also assures credit for all presentence custody, and not merely custody for want of bail.*" (Footnotes omitted.) (Emphasis added.)[8]

Accordingly, the Court held that it was the duty of the sentencing court to provide credit for *presentence custody for want of bail* no matter what the range of the penalty imposed, and regardless of whether a mandatory minimum sentence attached to the offense of which a defendant stood convicted. This decision was followed, chronologically, in Dunn v. United States, 376 F.2d 191, 193–194 (4th Cir. 1967); United States v. Smith, 379 F.2d 628, 634 (7th Cir.), cert. denied, 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486 (1967); Bryans v. Blackwell, 387 F.2d 764 (5th Cir. 1967), cert. denied, 391 U.S. 907, 88 S.Ct. 1658, 20 L.Ed.2d 421 (1968); United States v. Jones, 393 F.2d 728 (6th Cir. 1968); Lee v. United States, 400 F.2d 185 (9th Cir. 1968). Other courts, while agreeing that Section 3568, as amended in 1960, would apply only to cases where retention in custody was for want of bail, indicated disagreement with the *Stapf* decision. See United States ex rel. Sacco v. Kenton, 386 F.2d 143, 144–145 (2d Cir. 1967);[9] Sawyer v. United States, 376 F.2d 615, 618 (8th Cir. 1967); Allen v. United States, 264 F.Supp. 420, 422–423 (M.D. Pa.1966). The Court of Appeals in *Kenton, supra* 386 F.2d at 145, construing Section 3568 as it stood in 1964, felt that it was discretionary with the sentencing judge to give credit as he saw fit, in cases

---

8. Pg. 13. The Court in Stapf v. United States, 125 U.S.App.D.C. 100, 367 F.2d 326, 330 n. 11 (1966), construed the 1966 amendment to Section 3568 as extending "an administrative credit to all sentences, even though substantially below the maximum term."

The Court in Bryans v. Blackwell, 387 F.2d 764, 768 (5th Cir. 1967), cert. denied, 391 U.S. 907, 88 S.Ct. 1658, 20 L.Ed.2d 421 (1968), noted:

"[T]he 1960 Amendment required as to sentences imposed under the mandatory minimum requirements, that credit be given 'towards service of his sentence for any days spent in custody *prior to the imposition of sentence by the sentencing court for want of bail set for the offense under which sentence was imposed \* \* \*.*'" [Emphasis added.] The more recent amendment is broader in that it provides for the giving of credit for *all* pre-sentence custody and not merely custody for want of bail."

9. Pg. 14. But see Sobell v. United States, 407 F.2d 180 (2d Cir., Jan. 14, 1969).

where no mandatory minimum sentence was provided. That Court, however, construed Section 3568, as amended in 1966, as resolving any contradiction that might exist within the circuits by providing that all persons sentenced after its effective date (September 22, 1966) *shall* be credited with presentence time spent in custody.[10] Similar pronouncements on the purpose of the 1966 amendment to Section 3568 were made in Putt v. United States, 392 F.2d 64, 66 (5th Cir.), cert. denied, 393 U.S. 929, 89 S.Ct. 264, 21 L.Ed.2d 266 (1968); Bryans v. Blackwell, supra 387 F.2d at 766; Amato v. United States, 374 F.2d 36 (3d Cir. 1967); Malone v. United States, 269 F. Supp. 755, 756 (N.D.Fla.1967). It is clear from a review of these cases that the 1966 amendment to Section 3568 credited a defendant sentenced after its effective date with presentence custody regardless of whether that custody was effected by want of bail, and irrespective of any applicable minimum or maximum mandatory sentence.

Further light is shed on the scope of and proper construction to be given to the 1966 Amendment by a review of its legislative history.

In the form in which the Bail Reform Act originally passed the Senate, the critical phrase on credit for presentence custody read as follows:

" * * * Any such person shall be given credit toward service of his sentence for any days spent in custody in connection with the offense for which sentence was imposed. * * * "[11]

The Senate Report explained simply that the purpose of the bill in this connection was to "assure that persons convicted of crimes will receive credit for time spent in custody *prior to trial* against service of any sentence or payment of any fine imposed." (Emphasis added.)[12]

The House of Representatives then passed the bill in a form recommended by the House Committee on the Judiciary, which made it the mandatory responsibility of the Attorney General to give such credit and which added the phrase "or acts" after "offense". The purpose of the latter change was expressed in the House Report, which states:

"Amendment No. 15 would insert the phrase 'or acts' so as to include not only the offense but also acts for which sentence was imposed as a basis for credit toward service of a sentence for days spent in custody. The purpose behind this amendment is to cover a condition where the defendant may have been arrested for a crime but subsequently is convicted of a lesser crime; thus, under the amendment, even though convicted of a lesser crime, he is given credit for the time spent in custody while awaiting trial on the charge of a greater crime. It would also permit the giving of credit for time spent in custody while awaiting trial where a defendant may have been originally arrested and held in custody on a State charge and eventually turned over to the Federal Government for prosecution of a Federal violation."[13]

When the various House amendments to the Bail Reform Act were put before the Senate, Senator Ervin, who had sponsored the measure, said that he was "gratified that the bill has been amended only slightly in the House of Representatives. Most of the changes are technical and only four are of any substance."[14] He then proceeded to explain the four House amendments that he regarded as substantial. Amendment 15, which added the phrase "or acts", was not consid-

---

10. Pg. 15. The Court of Appeals in *Sobell, supra,* gave petitioner, who was sentenced to a maximum term prior to 1960, credit for pre-sentence custody "by considering the policies considered by Congress in enacting the Bail Reform Act."

11. Pg. 16. 111 Cong.Rec. 24521 (1965).

12. Pg. 16. *Id.* at 24523. See U.S.Code Cong. & Admin.News, p. 2297 (1966).

13. Pg. 17. H.Rep. 1541, U.S.Code Cong. & Admin.News, pp. 2294–2295 (1966); *id.* at p. 2306.

14. Pg. 17. 112 Cong.Rec. 12841 (1966).

ered.[15] Whereupon, Senator Ervin requested that all the amendments along with their explanations contained in the House Report [16] be printed in the record and moved that the Senate concur in them. The presiding officer called for any objections and, hearing none, declared the passage of Senator Ervin's motion.[17]

Nothing in this legislative history suggests that Congress intended the simplistic and sophisticated interpretation of Section 3568 urged by petitioner. Further, Dillinger v. Blackwell, 277 F.Supp. 389 (N.D.Ga.1967) and United States v. Beeker, 275 F.Supp. 608 (D.Md.1967), the only two cases found which have passed upon similar motions, support this Court's position.

Petitioner in *Blackwell, supra*, had been credited by the Attorney General with 58 days on his sentence, this being the period of time he spent in Federal custody between the date of his hearing before a United States Commissioner and the date of his sentencing in a Federal court for the interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. He thereafter moved for credit on his Federal sentence for time spent in State custody prior to being brought before the United States Commissioner. Petitioner was held by the State authorities on a charge of theft of the same motor vehicle by conversion. This charge, however, was *dropped* after petitioner's conviction in the Federal court. Petitioner argued, in effect, that he was being held in State custody for the theft of the vehicle whose transportation across a State line provided the basis for the Federal charge, and that such State custody amounts to "custody *in connection* with the offense or acts for

which sentence was imposed." Dillinger v. Blackwell, *supra* 277 F.Supp. at 390. The Court noted that:

"While petitioner's argument that custody for the theft of a chattel whose transportation is a federal offense is 'connected' has a certain superficial appeal, the court does not believe that the relatively insignificant changes in Section 3568 made in 1966 have the effect of upsetting the entire doctrine of concurrent criminal jurisdiction. * * * [T]he act for which petitioner was held in state custody (theft by conversion) and the act for which he was convicted (transporting a vehicle) are sufficiently distinguishable so that pre-sentence custody for one offense need not be credited to a conviction for the other." [18]

■ Since it was the intent of Congress to credit a defendant with "time spent in State custody on a charge which subsequently evolves as a Federal offense," [19] on these facts this Court would have reached a contrary result.[20] However, I adopt the reasoning of the court as applicable to the instant application.

In *Beeker, supra*, petitioner had stolen a car in Florida and transported it to Maryland where he was apprehended. He was sentenced by a Maryland State court to a term of six months' imprisonment for the theft of Maryland license plates which had been stolen after the car was brought to Maryland and had been placed on the stolen vehicle to conceal the fact that the car had been brought to Maryland from Florida. Upon completion of his State sentence, petitioner entered a plea of guilty in a Federal court to the charge of interstate transportation of a stolen motor vehicle (18 U.S.C. § 2312) and was sentenced to a term of five years.

---

15. Pg. 17. *Id.*

16. Pg. 17. H.Rep. 1541.

17. Pg. 17. 112 Cong.Rec. 12841–12843 (1966).

18. Pg. 19. Dillinger v. Blackwell, 277 F. Supp. 389, 390 (N.D.Ga.1967).

19. Pg. 19. U.S.Code Cong. & Admin.News, p. 2306 (1966).

20. Pg. 19. The purpose of the amendment is fully achieved by giving credit for all time served in State custody not pursuant to sentence, precisely the way credit is given for time in Federal custody that is not pursuant to a valid Federal sentence. In this respect see N.Y. Penal Law, McKinney's Consol.Laws, c. 40, § 70.30(3) (McKinney 1967).

Thereafter, petitioner sought credit for the time he spent in State custody under the State sentence. The Court held that the time spent in custody for the theft of the Maryland license plates was not spent " 'in connection with the offense or acts for which sentence (of this Court) was imposed.' " United States v. Beeker, *supra* 275 F.Supp. at 609.

While this case is distinguishable from the instant application in that the acts which formed the basis of the State prosecution occurred subsequent to the interstate transportation of the stolen automobile, the theft of the plates was an offense related to the interstate transportation in that they were used to prevent detection of the Federal offense. In this regard, this case can be analogized to the facts of the case presently before this Court, even assuming them to be as petitioner contends.

For the foregoing reasons, and after due deliberation, the instant application is in all respects denied.

So ordered.