**Wayne Pell JOYCE, Petitioner,**

v.

**J. D. COX, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 70–C–3–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

July 2, 1970.

---

13. 1 A.L.R.Fed. at 69.

14. *Id.*

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This case comes before the court on a petition for a writ of habeas corpus

filed *in forma pauperis* by Wayne Pell Joyce, a state prisoner, pursuant to 28 U.S.C. § 2241. The petition was filed with this court on January 26, 1970.

By this action, petitioner attacks convictions in the Circuit Court of Carroll County on nine indictments arising from a jail break. He has been sentenced to a total of sixty-one years imprisonment. Petitioner, represented by court-appointed counsel, was given separate trials on each indictment and entered a plea of not guilty in each.

A belated appeal was granted petitioner. On March 6, 1968, the Virginia Supreme Court of Appeals affirmed the convictions on eight of the indictments. By reported opinion, Joyce v. Commonwealth, 210 Va. 272, 170 S.E.2d 9 (1969), the court affirmed conviction on the last appeal, indictment #19. Petitioner also sought habeas corpus relief. On March 17, 1969, the Circuit Court of Carroll County held a plenary hearing, after which it dismissed the petition and denied relief. That decision was affirmed by the Virginia Supreme Court of Appeals on September 5, 1969. By presenting his claims to the highest court of the state, petitioner has exhausted his available state remedies on those claims in compliance with 28 U.S.C. § 2254. Thomas v. Cunningham, 313 F.2d 934 (4th Cir. 1963).

■ First, petitioner alleges he was given ineffective representation by counsel. He alleges by this petition that he was denied an appeal. The record shows that he was in fact given a belated appeal. This court would order a belated appeal if petitioner was actually denied an appeal. See Nelson v. Peyton, 415 F.2d 1154 (4th Cir. 1969). Because petitioner has received the relief which this court would order, nothing remains to consider on this claim.

■ While petitioner has not presented any other facts in this court on ineffective representation of counsel, the state record shows other facts he alleges amount to ineffective representation. He alleged counsel was ineffective for failure to have all of the indictments consolidated into one trial. However, counsel for the defense in Virginia criminal trials may not demand consolidation. The Commonwealth's Attorney has the privilege if he chooses to try each indictment separately. Lucas v. Commonwealth, 201 Va. 599, 112 S.E.2d 915 (1960).

■■ To prove ineffective representation it must appear that counsel's representation was so inadequate as to make a farce of the trial. Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959). While no other factual allegations are on record regarding ineffective representation, the court notes that there are no further facts showing the same.

■ Next, petition alleges that illegal procedures were used by the trial court. No facts are given to support this contention. However, this court will voluntarily consider factual claims made in the state courts to which petitioner may be alluding.

It has been alleged that all of the offenses for which petitioner was tried arose out of one set of facts—the escape. Petitioner asserted that he was thereby placed in double jeopardy.

In Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Supreme Court held that the double jeopardy clause of the Fifth Amendment applies to the states through the due process clause of the Fourteenth Amendment. Offenses are not the same for purposes of the double jeopardy clause of the Fifth Amendment merely because they relate to or grow out of one transaction or event. United States v. Friedland, 391 F.2d 378 (2d Cir. 1968); Gilbert v. United States, 299 F.Supp. 689 (S.D.N.Y.1969). If dissimilar facts must be proved, the offenses are not identical for purposes of double jeopardy. Bins v. United States, 331 F.2d 390 (5th Cir. 1964).

Petitioner challenges convictions on nine separate indictments. He was convicted under five indictments for rob-

bery, two for abduction, one for larceny, and one for breaking and entering. Each indictment charged a different offense. While similar facts surrounded most of the indictments, all were offenses against different people or property. Each indictment required proof of particular facts which none of the other indictments required. Petitioner is not shielded merely because the offenses were all part of one escape. The petitioner has not been twice placed in jeopardy by any of these indictments.

Petitioner also alleged in the state habeas corpus proceeding that he was illegally detained 96 hours before he was taken to a magistrate. Even though the evidence does not support this allegation, the court need not rely on that factual determination. The right granted under the federal rules to be promptly taken before a magistrate has not been given constitutional status and does not apply to persons in state custody. Kulyk v. United States, 414 F.2d 139 (5th Cir. 1969).

Petitioner's next claim is that pretrial publicity deprived him of a fair trial. Before the trials, petitioner's counsel sought a change of venue. To demonstrate the necessity for this change, petitioner's counsel introduced into evidence newspaper articles and radio broadcast reports concerning petitioner's escape from jail, his capture, and the pending court proceedings.

The motion for a change of venue lies in the discretion of the trial judge. Strong facts must be presented to find that a state judge abused this discretion and that a change of venue was required by due process of law. See Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). The trial judge must consider the mood of the community, the nature of the publicity and its intensity. The news accounts of petitioner's escape were free from any public denunciation of petitioner or any request for severe punishment. The accounts were generally factual. The radio broadcasts consisted mainly of warnings that two jail prisoners had escaped. While petitioner's escape attracted considerable attention in the surrounding community, the cases finding a violation of due process involved abuses which are not present in this case.

In Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), the Supreme Court found Sheppard had been deprived of a fair trial due to the trial judge's failure to protect Sheppard sufficiently from massive, pervasive and prejudicial publicity. Newspaper stories reported that Sheppard refused to cooperate with the police. Some editorials demanded an investigation of Sheppard's part in the crime. During the trial the newspapers emphasized the evidence that tended to incriminate Sheppard and pointed out discrepancies in his statements. Newsmen were placed inside the bar during the trial making confidential exchanges between Sheppard and his counsel impossible. The jurors were constantly exposed to the news media. In general the trial was disrupted by the activities of the news media. However, while the pretrial publicity was adverse, prejudicial and unobjective, the standards of due process were not thereby violated.[1] In spite of the pretrial publicity, the Supreme Court found that Sheppard could have received a fair trial had the trial judge used the proper means to protect the trial from the carnival atmosphere created by the news media.

In Irvin v. Dowd, 366 U.S. 717, 81 S. Ct. 1639, 6 L.Ed.2d 751 (1961), defense

---

1. The court held:

> While we cannot say that Sheppard was denied due process by the judge's refusal to take precautions against the influence of pretrial publicity alone, the court's later rulings must be considered against the setting in which the trial was held. In light of this background, we believe that the arrangements made by the judge with the news media caused Sheppard to be deprived of that "judicial serenity and calm to which [he] was entitled". 384 U.S. at 354 and 355, 86 S.Ct. at 1518, 16 L.Ed. 2d at 616.

counsel was denied a motion for change of venue on the basis of pretrial publicity. The Supreme Court, in setting the conviction aside, found prejudice to be clear and convincing. The news media reported more than facts. The continued adverse publicity caused a sustained excitement and fostered a strong prejudice against the defendant.

In Rideau v. Louisiana, *supra*, a filed interview between the sheriff and the defendant was broadcast over the television. The trial court denied the motion for a change of venue. The Supreme Court held:

> For we hold that it was a denial of due process of law to refuse the request for a change of venue, after the people of Calcasieu Parish had been exposed repeatedly and in depth to the spectacle of Rideau personally confessing in detail to the crimes with which he was later to be charged. * * * Any subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality. 373 U.S. at 726. 83 S.Ct. at 1419, 10 L.Ed.2d at 665.

Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), held that the defendant had been deprived of due process of law by the televising of his trial.

The petitioner in this case was not subjected to any of the abuses of the above cases. The news accounts of petitioner's escape and arrest were generally factual. There was no editorizing as in *Sheppard* or *Irvin*. The prejudice to petitioner is not clear and convincing as in *Irvin*. There does not appear to have been any sustained excitement in this case. Nor were there any televised reports which made the trial a "hollow formality" as in *Rideau*. In short the court cannot infer prejudice from the pretrial publicity in this case and petitioner has not demonstrated actual prejudice.

The *voir dire* in each of petitioner's cases stands as further evidence that he received a fair trial. Among other questions the court asked the veniremen:

> Have you made up or expressed an opinion in regard to the guilt or innocence of the accused? * * * Do you know of any reason, or can you tell the Court any reason why you think it would be improper for you to try this case?

Also, the court posed generally the following questions:

> Now, there's been some newspaper publicity of this alleged offense and you know this young man comes before this Court, as all people charged with crimes do, innocent and he is presumed to be innocent until he is proven guilty beyond a reasonable doubt by the witnesses that appear before you. Have you heard anything over the radio, or have you seen or heard anything on television, or read anything that would influence you or take any evidence to remove an opinion, or can you sit right in this jury box and try this man, as I stated before, solely and only on what you hear here? Are there any questions about it by any of you?

Petitioner's counsel in most of the cases also made an examination to insure that petitioner would receive a fair trial.

The applicable standard was expressed as follows in Irvin v. Dowd, *supra*, 366 U.S. at 722 and 723, 81 S.Ct. at 1642 and 1643, 6 L.Ed.2d at 756.

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption

of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. Spies v. Illinois, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; Reynolds v. United States, supra, 98 U.S. 145, 25 L.Ed. 244.

No distinction can be made that each juror was not individually questioned as in Rees v. Peyton, 341 F.2d 859 (4th Cir. 1965).

The trial judge who was in touch with the mood of the community and with the pervasiveness of the pretrial publicity denied the change of venue. The court has not been presented with evidence which shows that the trial judge abused his discretion. Further, the trial judge sought to insure that no juror would allow pretrial publicity to affect his decision.

Finally, petitioner alleges that he was held incommunicado. Petitioner states he was not permitted to make a phone call to obtain counsel. After the plenary hearing in the state court, the judge made a determination that petitioner's testimony was false and that petitioner could have made a phone call. This court will rely on the state determination, which was made after hearing sufficient evidence. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

For the foregoing reasons, it is adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the relief denied.

If the petitioner wishes to appeal this judgment or any part thereof, he may do so by filing with the clerk of *this* court a notice of appeal. Failure to file the notice of appeal within 30 days may result in a denial of the right to appeal. The notice shall state the following:

1. The party or parties taking the appeal;

2. The judgment, order or part thereof appealed from; and

3. The court (United States Court of Appeals for the Fourth Circuit) to which the appeal is taken.

The clerk is directed to certify copies of this opinion and judgment to the petitioner and to the respondent.