**CHUA HAN MOW, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. C–85–2399–WWS.**

United States District Court, N.D. California.

Oct. 15, 1985.

---

Janet Sherman, Santa Monica, Cal., for petitioner.

Charles B. Burch, Asst. U.S. Atty., San Francisco, Cal., for respondent.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

Petitioner, Chua Han Mow, moves to correct his federal sentence to reflect time he served in Malaysian custody allegedly "in connection with" the same acts upon which his federal sentence is based. Petitioner was held in Malaysian custody for two different periods: August 4, 1975 to December 20, 1977; and December 21, 1977 to November 28, 1979. The Attorney General determined that the second period of incarceration was for the same offense as the federal conviction and awarded credit for time served during that period, in accordance with 18 U.S.C. § 3568. At issue in this motion is the first period of custody. Because petitioner has failed to demonstrate his first period of Malaysian detention was in connection with the same acts upon which his current federal sentence is based, his motion will be denied.

I. *The Standard of Review for Sentence Correction by the District Court*

This court has jurisdiction to correct a federal sentence pursuant to 28 U.S.C. § 2255, which states in pertinent part:

If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law ... the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a

new trial or correct the sentence as may appear appropriate.

Petitioner has moved to correct his federal sentence under section 2255, attacking the lawfulness of his prison term based on the statutory entitlement to credit created by 18 U.S.C. § 3568, which requires the Attorney General to give a federal prisoner "credit toward service of his sentence for any days spent ·in custody in connection with the offense or acts for which sentence was imposed."

The Attorney General bears the initial responsibility for determining when credit is due under section 3568, *United States v. Clayton,* 588 F.2d 1288, 1292 (9th Cir.1979), and it is only when a prisoner has exhausted his administrative remedies that he has recourse to the district court. *Chua Han Mow v. United States,* 730 F.2d 1308, 1313 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985). Chua has met this burden; his application for credit for the period August 4, 1975 to December 20, 1977 has been denied by the Attorney General.

■ Once the executive branch has acted, the district court may review the administrative decision for compliance with section 3568 in order to protect the prisoner's statutory right to credit. *United States v. Morgan,* 425 F.2d 1388, 1390 (5th Cir.1970); *see also United States v. Mathis,* 689 F.2d 1364, 1365 (11th Cir.1982). In making its review, the court is not necessarily bound by the administrative findings of fact. *See, e.g., Shaw v. Smith,* 680 F.2d 1104, 1107 (5th Cir.1982) (whether state custody was due solely to federal action is question of fact for district court to determine); *O'Connor v. Attorney General of U.S.,* 470 F.2d 732, 734 (5th Cir.1972) (same); *Morgan,* 425 F.2d at 1390 (whether state and federal charges were the "same" is for court to determine); *Doyle v. Elsea,* 658 F.2d 512, 514–15 (7th Cir.1981) (review of § 3568 administrative decision; no mention of deference to administrative record); *Thompson v. Brooks,* 510 F.Supp. 223 (S.D. N.Y.1981) (same). In any event, if the initial administrative proceeding does not resolve the prisoner's claim of entitlement to credit, the district court is free to address

the issue. *See Shaw,* 680 F.2d at 1107 (where connection between federal action and state custody unresolved, court could decide the issue); *O'Connor,* 470 F.2d at 734 (same); *Morgan,* 425 F.2d at 1390 (similarity between state and federal charges unclear). Here, the Chief of Administrative Systems of the Federal Bureau of Prisons declared that he was "unable to make a determination as to whether the offenses which led to [Chua's] conviction in the United States are the same as those in Malaysia for which he was ordered detained ...," (Defendant's Opposition, filed March 31, 1985, Declaration of Don Anderson, at ¶ 4) and the government denied petitioner's claim because it was unable to determine the issue from petitioner's papers. *Id.* Thus the executive branch has not decided the issue. Accordingly, the court may proceed with *de novo* review of petitioner's motion.

## II. *Factual Background*

Chua Han Mow, a Malaysian citizen, was originally indicted by a federal grand jury on May 16, 1973. He was charged along with six others with conspiring to violate federal laws prohibiting the importation, possession and distribution of heroin. Specifically, the indictment alleged Chua participated in a scheme to smuggle heroin from Malaysia to San Francisco. The acts alleged occurred in 1972 and 1973 in Malaysia and the United States. A federal warrant for Chua's arrest was issued on the same day as the indictment.

From May 1973, until his eventual arrest in August 1975, attempts were made to apprehend Chua in Malaysia, where warrants were also pending against him. (Petitioner's Suppl. to § 2255 Motion, filed March 19, 1985, Ex. I at 84 (Dept. of Justice memo)). Declassified federal documents released to petitioner pursuant to the Freedom of Information Act indicate federal drug enforcement officers had a strong and continuing interest in capturing Chua during this period. On May 24, 1973, a joint Malaysian-American "round-up" operation in Penang, Malaysia, based upon

Malaysian warrants (*Id.*), failed to net Chua, who had gone into hiding.

While Malaysian and American authorities were tracking down Chua, United States officials had also begun preliminary procedures to extradite him, in apparent anticipation of his eventual apprehension. (*Id.*) A Department of Justice memorandum, probably written in June 1973, described the situation: "It is uncertain at this time, exactly what legal measures the government of Malaysia can bring against the subjects of these investigations. If adequate legal actions cannot be brought attempts will be made to extradite." (*Id.*) By January 1975, extradition efforts had officially started through the government of Thailand, since there was no Malaysian-American extradition treaty in effect at the time. (*Id.* at 72 (telex from American Embassy, Malaysia), 79 (Dept. of Justice investigation report), 81 (same), 96 (same)).

On August 4, 1975, Chua was arrested by Malaysian police, apparently without the assistance of federal agents. A month later, he was convicted of violating the Malaysian Emergency Ordinance of 1969 and was subsequently imprisoned in Malaysia for a period of two years, commencing October 2, 1975, and continuing until October 1, 1977. His conviction was based upon his drug smuggling activities in Malaysia since 1960.

While Chua was in prison, United States officials continued their efforts to extradite him. (*Id.* at 75 (Dept. of Justice investigation report)). An amendment to Malaysia's Extradition Ordinance of 1958, effective January 1977, permitted Malaysian officials to accept "[d]irect requests from any foreign country for the extradition of a fugitive criminal." (*Id.* at 96 (Dept. of Justice investigation report)). In September 1977, the United States formally requested the extradition of Chua. (*Id.* at 72 (telex from American Embassy, Malaysia), 95 (same)).

Chua completed his Malaysian prison term on October 1, 1977. Upon his release, Malaysian officials ordered him restricted to the Province of Bundi for another two years, which was apparently customary procedure. (Petitioner's Suppl. to § 2255 Motion, filed November 22, 1982, Exhibit B, Transcript of Extradition Proceedings, at 4 (Cross-Examination of Tan Khik Seng)). A month after his release, on November 2, 1977, a federal grand jury returned a superseding indictment against him and others. The new indictment charged Chua with participating in the same 1972–73 heroin smuggling operation that formed the basis of the 1973 indictment. A day after the indictment, a new arrest warrant was also issued for Chua.

On December 21, 1977, Chua was again arrested by Malaysian authorities, this time based solely upon a request from the United States. (*Id.* at 10 (Direct-Examination of Tan Khik Seng); *see also* Petitioner's Suppl. to § 2255 Motion, filed March 19, 1985, Ex. I at 72 (telex from American Embassy), 95 (same)). He remained incarcerated in Malaysia until he was extradited to the United States on November 28, 1979. Chua pled guilty on April 20, 1979 to two of three counts pending against him in the superseding indictment. This Court sentenced him to thirty years in prison—15 years on each count, to run consecutively.

Petitioner now moves this Court, pursuant to 18 U.S.C. § 3568, for an order requiring the Attorney General to credit his federal sentence with the time he spent in Malaysian detention from August 4, 1975 to December 20, 1977. Petitioner has already received credit for his second period of incarceration in Malaysia, from December 21, 1977 to November 28, 1979. Since Petitioner has exhausted his administrative remedies in seeking credit for his first period of detention, his present motion is properly before the court.

### III. *The Statutory Criteria for Determining Whether Credit is Due*

Under 18 U.S.C. § 3568, the Attorney General must give a federal prisoner "credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." Petitioner claims his Malaysian detention from August 4, 1975 to Decem-

ber 20, 1977 was "in connection with" his later federal conviction and therefore he is entitled to credit for this time. Petitioner has the burden to prove this connection. *United States v. Dovalina*, 711 F.2d 737, 740 (5th Cir.1983); *Shaw v. Smith*, 680 F.2d 1104, 1106 (5th Cir.1982).[1]

Chua's Malaysian custody is composed of three distinct periods: 1) *presentence custody*, from August 4, 1975 to October 2, 1975; 2) *postconviction imprisonment* for violating Malaysian law, extending from October 2, 1975 to October 1, 1977; and 3) *postimprisonment restriction* to Bundi Province from October 1, 1977 to December 21, 1977. Two of these periods may be quickly dismissed.

### A. *Postconviction Imprisonment*

Two years of petitioner's Malaysian detention (October 2, 1975 to October 1, 1977) were served pursuant to a Malaysian prison sentence imposed as a result of Chua's conviction under the Malaysian Emergency Ordinance of 1969. Petitioner's claim of entitlement to credit for this period of incarceration is without merit because it involves *postconviction* custody.

█ It is a threshold requirement for section 3568 credit that the custody for which credit is sought is *presentence* custody; time served pursuant to a valid conviction, either federal or nonfederal, may not be credited against a federal prisoner's sentence under section 3568.[2] *See Shelvy v. Whitfield*, 718 F.2d 441, 444 (D.C.Cir.1983); *United States v. Haney*, 711 F.2d 113, 115 (8th Cir.1983); *United States v. Shillingford*, 586 F.2d 372, 374 (5th Cir.1978); *Goode v. McCune*, 543 F.2d 751, 753 (10th Cir.1976); *Howard v. United States*, 420

F.2d 478, 480 (5th Cir.1970); *Kimberlin v. Attorney General*, No. 84-C-5924 (N.D.Ill. July 9, 1985) (available October 1, 1985, on Westlaw, Allfeds file). *Cf. United States v. Love*, 555 F.Supp. 1041, 1043 (N.D.Cal. 1983).

The legislative history of section 3568 clearly indicates that Congress intended the statute only to provide credit for presentence custody. *See* S.Rep. No. 750, 89th Cong., 1st Sess. 21, 111 Cong. Rec. 24523 (1965) (amendments to § 3568, which established the section in its present form, were designed to "assure that persons convicted of crimes will receive credit for time spent in custody *prior to trial*" (emphasis added)). Moreover, this intent is evident in the caption to 18 U.S.C. § 3568, which reads in pertinent part, "credit for time in custody *prior to the imposition of sentence.*" (emphasis added). Finally, the Federal Prison System (FPS), the administrative arm of the Department of Justice and Attorney General responsible for allocation of prison credit, has incorporated the rule into its regulations. The FPS determines eligibility for section 3568 credit according to guidelines contained in Program Statement No. 5880.24, *Sentence Computation, Jail Time Credit Under 18 U.S.C. 3568*, dated September 5, 1979 [hereinafter "FPS Statement 5880.24"], which state at section 5.b.(2) (applying to sentences imposed on or after September 20, 1966): "Jail time credit will not be given for any portion of time spent serving another sentence, either federal or non-federal [except where the non-federal sentence is later vacated]." This FPS interpretation of section 3568 is entitled to great deference. *See N.Y. State Dept. of Social Services v. Du-*

---

1. *But Cf. United States v. Haney*, 711 F.2d 113, 114 (8th Cir.1983) (where federal detainer has been filed against defendant, government has burden to rebut presumption that detainer was sole cause of state custody). Here, petitioner has not shown that a federal detainer was ever issued, nor does it seem likely one ever was, or would have been effective even if issued, since no Malaysian-American extradition treaty was in effect at the time of Chua's presentence custody.

2. An exception to this rule exists for a prisoner whose state or federal sentence is later vacated.

In that case postconviction imprisonment will be credited if it is based on the same charges as the later federal sentence. *See* Federal Prison System Program Statement No. 5880.24, *Sentence Computation, Jail Time Credit Under 18 U.S.C. 3568*, dated September 5, 1979, § 5.b.(2). *E.g., United States v. Floyd*, 519 F.2d 1031, 1035 (5th Cir.1975); *Emig v. Bell*, 456 F.Supp. 24, 26 (D.Conn.1978); *Mize v. United States*, 323 F.Supp. 792, 794 (N.D.Miss.1971); *Hill v. Holman*, 255 F.Supp. 924, 925 (M.D.Ala.1966).

*blino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 2516–17, 37 L.Ed.2d 688 (1973) (construction of statute by those charged with its execution should be followed unless there are compelling indications the construction is wrong).

Accordingly, petitioner's claim for credit for the prison time he served from October 2, 1975 to October 1, 1977, pursuant to his conviction under the Malaysian Emergency Ordinance of 1969, must be denied.

### B. *Postimprisonment Restriction*

Petitioner further claims he is entitled to credit for the time he was restricted to Bundi Province after his release from Malaysian prison on October 1, 1977, and up until the date of his second arrest, on December 21, 1977. This claim is also without merit.

Chua was restricted to Bundi Province by an order dated September 28, 1977, effective October 1, 1977. The order stated that restriction "is required ... [for] the purpose of preventing the person [Chua] from committing any activities in whatever form to jeopordize [sic] public order." Under its terms, Chua was required: 1) to reside in "Bundi Province, Kemaman District, Trengganu;" 2) to maintain his residence there, unless permitted to move by the police; 3) to restrict his travel only to that region, unless permitted to travel outside the restricted area; 4) to inform the police of his address; 5) to present himself to the nearest police station every Monday; 6) to remain in his home between 8:00 p.m. and 6:00 a.m.; and 7) to "keep the peace and be in good behavior." Chua was not confined in a jail or prison while in Bundi Province.

 Under section 3568, "custody" refers to days actually spent in prison. *Polakoff v. United States,* 489 F.2d 727, 730 (5th Cir.1974); *Ortega v. United States,* 510 F.2d 412, 413 (10th Cir.1975); *United States v. Peterson,* 507 F.2d 1191, 1192–93 (D.C.Cir.1974); *Thompson v. Brooks,* 510 F.Supp. 223, 225 (S.D.N.Y.1981); *Hogan v. United States,* 383 F.Supp. 850, 852 (D.S.C. 1974). *See also* FPS Statement 5880.24 §§ 5 & 5.b.(4)(c) ("custody" means *"physi-*

*cal* incarceration in jail-type institution or facility" (emphasis in original)). It does not refer to time out on bail, *United States v. Robles,* 563 F.2d 1308, 1309 (9th Cir. 1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978); *Sica v. United States,* 454 F.2d 281, 282 (9th Cir.1971); *Cochran v. United States,* 489 F.2d 691, 693 (5th Cir.1974); *Ortega,* 510 F.2d at 413, nor does it refer to time out on parole, *United States v. Hawkins,* 492 F.2d 771, 772 (5th Cir.), *cert. denied,* 419 U.S. 1052, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974); *Thompson v. Brooks,* 510 F.Supp. at 225. "Custody" refers only to time spent in "detention or imprisonment in a place of confinement." *Peterson,* 507 F.2d at 1192–1193 (reviewing legislative history). Numerous courts have refused to grant credit for bail time or parole with restrictions similar to those imposed upon Chua. *See, e.g., Robles,* 563 F.2d at 1309 (restrictive bond not considered custody, though it limited travel, required defendant obey all laws and court orders, and keep his attorney posted with his address); *Polakoff,* 489 F.2d at 730 (bond restricted social life and travel); *Thompson,* 510 F.Supp. at 225 (parole required weekly, bi-weekly and monthly reports to state parole officers). Thus Chua is not entitled to credit for the time he spent restricted to Bundi Province.

### C. *Presentence Custody*

The only period of Malaysian detention for which petitioner might be entitled to credit under section 3568 is the time he served in presentence custody, from the date of his arrest (August 4, 1975) to the date he began to serve his Malaysian prison sentence (October 2, 1975). But this claim also fails.

Petitioner bases his claim to credit on the theory that his Malaysian custody and federal sentence were based on the same acts or offense. This argument is derived from the Federal Prison System's regulations, which state: "If the federal inmate has been in presentence state custody on essentially the same charge, credit will also be given even though a federal detainer may not have been on file during that time." FPS Statement 5880.24, § 5.c.(1)(b).

The standard used by both the FPS and the courts to determine whether charges supporting the state custody are the "same" as those supporting a federal sentence is a strict one. The FPS guidelines state:

> Credit will be given for time spent in non-federal presentence custody when the non-federal and federal charges are similar enough to be considered the same criminal charges or offense. This is applicable when the factors of time, location, and the criminal acts are identical in both charges.

FPS Statement 5880.24, § 5.c.(1)(b). In *Gilbert v. United States*, 299 F.Supp. 689 (S.D.N.Y.1969), the court held that "[o]ffenses are the 'same' only when the evidence required to support a conviction upon a Federal indictment would have been sufficient to warrant a conviction upon the State indictment." *Id.* at 692. There, state charges of check theft were held not the "same" as federal charges of stock fraud perpetrated with the very checks which were stolen. *Id.* at 693. A similar standard has been used by virtually all other courts addressing the issue. *See, e.g., Shillingford,* 586 F.2d 372 (state and federal assault charges arising from one shootout with both state and federal officers not the "same"); *Goode v. McCune,* 543 F.2d 751 (10th Cir.1976) (federal and state charges of bank robbery arising from one robbery not the "same"); *Fontaine v. United States,* 434 F.2d 1310 (5th Cir.1970) (state charge of wrongful appropriation of a car and federal charge of transporting the same car across state lines); *Dillinger v. Blackwell,* 277 F.Supp. 389 (N.D.Ga. 1967) (same); *United States v. Beeker,* 275

F.Supp. 608 (D.Md.1967) (federal charge of transporting stolen vehicle and state charge of stealing tags for use in the same crime). *See also* 47 A.L.R.Fed. at 767–70 (collecting cases).

The Malaysian and federal charges brought against Chua do not satisfy this strict standard. Chua was convicted in Malaysia for violating the Malaysian Emergency Ordinance of 1969. Presumably, Chua's arrest on August 4 and his presentence custody were based upon the same grounds for which he was convicted by Malaysian authorities; petitioner has offered no persuasive evidence to the contrary.[3]

Chua's Malaysian conviction listed as its "grounds" the following government finding:

> That you since 1960 being an active member of an illegal syndicate in the trafficking of drugs in and out of the country. Your activities not only tarnish the international image of Malaysia but also cause the increase of crimes involving violence in respect of drugs and thus you have acted in such a manner contrary to public order.

In addition, the Order specified three "allegations of fact:" 1) that since 1960, Chua was "an active member of an illegal syndicate extensively involved in the smuggling of dutiable goods into Malaysia;" 2) that since 1960, he was "an active member of an illegal syndicate involved in the trafficking of opium from Thailand into Malaysia and having connections with drug traffickers in Singapore, Hong Kong and other South-East Asian countries;" and 3) that since 1971, he was "an active member of various syndicates involved actively in the trafficking of drugs in and out of the country."[4]

---

**3.** Although petitioner claims the "United States authorities had advised the local Customs Department to arrest Chua and others and punish them," (Petitioner's Suppl. to § 2255 Motion, filed March 19, 1985 at 3), he has not supported this contention with any convincing evidence; petitioner cites only the hearsay declaration of his Malaysian attorney, which tentatively states: "When I talked to Mr. Boon [a Malaysian Customs Officer] and as far as I can now remember, he mentioned to me that the United States ... advised the Local Customs Department to arrest and punish [Chua and others]." (*Id.,* Ex.

A, Declaration of Triptipal Singh). Mr. Singh's declaration is contradicted by the federal documents petitioner submitted in support of his motion and which indicate Chua was arrested August 4, 1975, based on Malaysian warrants, as detailed earlier.

**4.** These allegations of fact were, in turn, based upon a lengthy statement made by Chua between August 20, 1975 and August 28, 1975 while held in police custody. Although petitioner originally challenged the use of this statement at his sentencing, he used a portion of it in

In contrast to the Malaysian Order, the November 2, 1977 federal indictment to which petitioner pleaded guilty charged Chua with involvement in a single 1972–73 scheme to smuggle heroin into San Francisco. Specifically, Count I of the indictment charged Chua with conspiring to import heroin into the U.S. in violation of 21 U.S. §§ 846 and 963, based upon his alleged participation in a series of meetings and drug deals with federal undercover agents in Malaysia, beginning March 25, 1973, and continuing through May 17, 1973. Count III (Count II was dropped when Chua pleaded guilty to Counts I and III) charged Chua with distribution of heroin with the intent to smuggle it into the U.S. in violation of 21 U.S.C. § 959; it was based upon his distribution of the drug in Penang, Malaysia in May, 1973.

█ A facial comparison of both the Malaysian and federal charges shows that the bases for petitioner's Malaysian custody and his federal conviction are clearly different; the former is based on acts extending back to 1960, the latter on acts occurring in 1972 and 1973. But even assuming, *arguendo*, that the sole factual basis for the Malaysian charge of drug smuggling was the same 1972–73 series of acts which supported Chua's federal conviction, petitioner's argument still fails because the elements of the Malaysian and federal charges differ in at least one key respect: the federal charge of drug smuggling requires the intent to smuggle the drug into the United States; this element is not a necessary component of the Malaysian charge.[5] For these reasons, the charges supporting Chua's Malaysian custody are not sufficiently similar to those supporting his federal conviction so as to entitle petitioner to section 3568 credit.[6]

Accordingly, petitioner's § 2255 motion is denied.

IT IS SO ORDERED.

---

5. support of the motion now before the court (*See* Petitioner's Suppl. to § 2255 Motion, filed March 19, 1985, Ex. G). In fairness, the court considers the remainder of the statement, pursuant to Fed.R.Evid. 106. The government submitted the complete statement during Chua's sentencing in 1980. (*See* Government's Memo Re Admissibility of Confession, filed April 1, 1980, Ex. A).

The seventeen page, single-spaced statement amply supports the Malaysian government's grounds for detention. In it, Chua admits to participating in the smuggling of textile into Malaysia from 1960 (*Id.* at ¶¶ 5, 7); to assisting people he knew were smuggling opium into Malaysia from Thailand (*Id.* at ¶¶ 58, 78, 79, 84); and to participating in at least four heroin deals, one in 1971, destined for New York (*Id.* at ¶¶ 11–18, 22), another two in 1974, possibly destined for Amsterdam or the United States (*Id.* at ¶¶ 65–71, 72–75), and the 1972–73 smuggling operation aimed at San Francisco and for which Chua was indicted by the federal grand jury. (*Id.* at ¶¶ 24–33). In addition, the statement also details Chua's active participation in illegal gambling operations throughout Southeast Asia, as well as his close association with numerous drug traffickers.

5. Additionally, petitioner argues that the August 4, 1985-December 20, 1977 period of Malaysian detention "was based on a plea bargain arrangement whereby Chua was advised by Malaysian authorities ... that if he would admit to having participated in the charged offenses, the Minister of Home Affairs would agree to confine him in Malaysia for two years in lieu of being extradited to the United States." (Petitioner's Suppl. to § 2255 Motion, filed March 19, 1985, at 2). Thus petitioner apparently contends this plea bargain arrangement shows that the Malaysian detention was due to the federal charges. But this proposition is not convincing.

First, the only evidence submitted by petitioner in support of the alleged plea bargain is a hearsay declaration by Chua's Malaysian attorney. (*See Id.*, Ex. A). Second, the thrust of petitioner's argument is belied by the very face of the Malaysian detention order, which is clearly based on charges different from the federal indictment, as already explained. Finally, petitioner admitted his guilt in his presentence statement to many more crimes than simply the 1972–73 San Francisco smuggling scheme. *See* footnote 4 *supra*.

6. Because petitioner's claim fails based on the face of the Malaysian and federal charges, his request for an evidentiary hearing is also denied.