**Henry Dewilliams JACKSON, Petitioner–Appellant,**

v.

**Edward J. BRENNAN, Warden, Respondent–Appellee.**

No. 88–1037.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1990.

Decided Feb. 13, 1991.

Bradley D. Jackson, Foley & Lardner, Madison, Wis., Thomas L. Shriner, Jr., Foley & Lardner, Milwaukee, Wis., Henry D. Jackson, U.S. Penitentiary, Leavenworth, Kan., for petitioner-appellant.

Sheree L. Gowey, Mark A. Cameli, Asst. U.S. Atty., Madison, Wis., for respondent-appellee.

Before BAUER, Chief Judge, POSNER and KANNE, Circuit Judges.

BAUER, Chief Judge.

The issue in this habeas corpus case is whether the federal prison system is required to give the Petitioner credit for time spent in Cuban custody. The district court held that it is not, and denied the petition. We affirm.

I

In 1972, Petitioner Henry D. Jackson, Jr., and two other individuals, hijacked Southern Airways Flight No. 49 en route from Memphis, Tennessee to Miami, Florida. Jackson and his cohorts put the passengers and crew through a terrifying, two-day ordeal. Demanding a ten million dollar ransom from the City of Detroit, they forced the plane to be flown to more than ten cities in the United States and Canada. The FBI surrounded the plane during a refueling stop in Orlando, Florida, and attempted to shoot out the tires. In the fray that ensued, Jackson shot and wounded the co-pilot.

Eventually, the hijackers took the plane to Havana, Cuba, where Cuban authorities immediately captured and incarcerated them. After what the district court referred to as a "mock trial," the Cuban government sentenced Jackson to prison. Jackson ultimately would serve eight years in Cuban custody. Meanwhile, back in the United States, a federal grand jury returned an indictment for airplane hijacking against Jackson in November, 1972.

In October, 1980, Cuban authorities released Jackson to the United States. Immediately upon his arrival here, Jackson was taken into custody by federal authorities pursuant to the indictment that remained pending against him. Jackson was prosecuted by the United States Attorney's Office for the Northern District of Alabama. That office and Jackson reached a plea agreement, under which Jackson pleaded guilty to the offense of aircraft piracy. *See* 49 U.S.C. § 1472(i).[1] In 1981, the United States District Court for the Northern District of Alabama sentenced Jackson to a twenty-five year prison term and committed him to custody. Jackson remains incarcerated to this day. (Jackson's two confederates in the hijacking have since been released from federal custody.)

The instant dispute concerns the computation by the United States Bureau of Prisons and the United States Parole Commission of how much of his twenty-five year sentence Jackson actually will serve. In the decision complained of, the federal prison system determined that, although Jackson would be given credit for the time he spent in custody between his arrival in the United States and his conviction, he would not be given credit for the time he spent in Cuban custody. Jackson appealed this determination through administrative channels, but the prison system stood firm in its refusal to give credit for Jackson's Cuban incarceration. Proceeding *in forma pauperis*, Jackson then brought the instant habeas corpus petition pursuant to 28

---

1. We will assume, for purposes of disposing of this appeal, that the hijacking incident to which

Jackson pleaded guilty in federal court was the

U.S.C. § 2241.[2] The district court denied the petition, and, one month later, denied as well Jackson's "motion for reconsideration," which the court treated as a motion to amend or alter judgment under Fed.R. Civ.P. 59(a). From this final decision, Jackson brought a timely appeal.

## II

In his § 2241 petition, Jackson argues that his custody is in violation of federal statute. *See* 28 U.S.C. § 2241(c)(3). The federal statute he cites is 18 U.S.C. § 3568, which provided[3] as follows:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. *The Attorney General shall give any such person credit toward the service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.* As used in this section, the term "offense" means any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress.

If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

No sentence shall prescribe any other method of computing the term.

(Emphasis added.) Jackson argues that § 3568, and in particular the portion italicized above, obligates the federal prison system to credit against his sentence the time he spent in Cuban custody for the same hijacking episode. (Were Jackson to receive this credit, it appears that he would already be eligible for release.)[4]

Jackson's interpretation of § 3568 finds no support in the statute itself, its legislative history, or the case law. We begin, of course, with the plain language of the statute. *See United States v. One Parcel of Real Estate*, 903 F.2d 490, 492 (7th Cir. 1990) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979)). Jackson's Cuban custody cannot possibly be characterized as "in connection with the *offense* ... for which sentence was imposed" (emphasis added), for § 3568 explicitly limits the term "offense" to violations of federal law triable in the federal courts. Jackson's Cuban incarceration was due to a violation of Cuban law. To construe a violation of foreign law as a creditable "offense" under § 3568 would do violence to the plain meaning of the terms of the statute.

This route closed to him, Jackson relies upon a disjunctive reading of the phrase "or acts." He argues that "acts" should be read more broadly than "offense" to include situations in which an individual is incarcerated for a single criminal "act"

---

same incident for which he was incarcerated in Cuba.

**2.** At the time he filed the petition, Jackson was confined at the Federal Correctional Institution at Oxford, Wisconsin. (He apparently has since been transferred.) Thus, in response to concerns mentioned by the district court in footnote one of its order, it appears that venue was indeed proper in the Western District of Wisconsin.

To clear up another such procedural issue, it appears that Jackson's petition named the proper respondent; whatever other positions Respondent Edward Brennan has held, Jackson has asserted (and the State has not contested) that Brennan was the warden at Oxford when Jackson filed his § 2241 petition.

**3.** Effective November 1, 1987, § 3568 has been repealed. *See* Pub.L. 98–473, Title II, §§ 212(a)(2) & 235(a)(1), 98 Stat. 1987, 2031 (1984). As the offense for which Jackson was sentenced occurred before that date, § 3568 still applies here.

**4.** In addition to his argument from § 3568, Jackson points us to a Cuban/American treaty concerning the prosecution of hijackers, the effective date of which was well after Jackson and his cohorts hijacked Flight No. 49, and to various position statements of the Bureau of Prisons. We have considered these arguments, but find them of insufficient merit to warrant discussion.

(here, hijacking) in both the federal system and a foreign—or, presumably, state—system. Thus, under this reading of the statute, § 3568 requires the federal system to give credit for foreign or state incarceration in such situations, even though that foreign or state incarceration was pursuant to the laws of another sovereign.

The phrase "or acts" cannot support the weight placed upon it by Jackson. The words "offenses or acts," as well as the limiting definition of "offense," were added to § 3568 at the same time, in the 1966 amendments to § 3568. Pub.L. 89–465, 80 Stat. 217 (1966). Referring specifically to the amendment that inserted the words "or acts," the House explained that this phrase was added

> so as to include not only the offense but also acts for which sentence was imposed as a basis for credit toward service of a sentence for days spent in custody. The purpose behind this amendment is to cover a situation where the defendant may have been arrested for a crime but subsequently is convicted of a lesser crime; thus, under the amendment, even though convicted of a lesser crime, [the defendant] is given credit for the time spent in custody while awaiting trial on the charge of the greater crime. It would also permit the giving of credit for time spent in custody while awaiting trial where a defendant may have been originally arrested and held in custody on a State charge and eventually turned over to the Federal Government for prosecution of a Federal violation.

H.R.Rep. No. 1541, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 2293, 2294–95. This legislative history merely reinforces what the statute itself makes sufficiently clear: credit must be given only when the pre-sentence custody is federal custody or non-federal custody that was caused or sustained by the federal government. *Cf. Siegel v. United States*, 436 F.2d 92, 95 (2d Cir.1970) (interpreting the 1966 amendments to § 3568 to the same effect); *Gilbert v. United States*, 299 F.Supp. 689, 695 (S.D.N.Y.1969) (rejecting argument that insertion of "or acts" into 1966 amendments requires credit for state custody for factually connected crime).

The case law is uniformly against Jackson's position as well. Although it appears that no reported decisions have addressed the treatment of pre-sentence foreign custody under § 3568,[5] a substantial number of cases have addressed the analogous issue of the treatment of pre-sentence state custody under § 3568. In every one of these cases, the courts have held that § 3568 does not require credit against a federal sentence for pre-sentence state custody (unless, as mentioned above, the state custody was at the behest of the federal government), even when the identical criminal "acts" formed the basis for both the federal and state prosecutions. *See, e.g., Shaw v. Smith*, 680 F.2d 1104, 1106 (5th Cir.1982); *Goode v. McCune*, 543 F.2d 751, 753 (10th Cir.1976) (per curiam); *Culotta v. Pickett*, 506 F.2d 1061, 1062–64 (7th Cir. 1974). Declining Jackson's invitation to reject this entire body of precedent as "erroneous interpretations of § 3568," we find the analogy persuasive. In other words, as with state custody, § 3568 does not require that the federal prison system give Jackson credit for his pre-sentence Cuban custody, because that custody was pursuant to the laws of, and under the complete control of,

---

**5.** Jackson points for support to *Chua Han Mow v. United States*, 619 F.Supp. 1332 (N.D.Cal. 1985). As Jackson properly notes, that district court opinion subsequently was vacated by the Ninth Circuit in an unpublished decision. *See* 796 F.2d 478 (9th Cir.1986) (Table), *cert. denied*, 479 U.S. 1068, 107 S.Ct. 958, 93 L.Ed.2d 1007 (1987). The vacated district court opinion in *Chua*, although it addresses the treatment of foreign custody under § 3568, does not significantly advance Jackson's argument in any event. We also note that, in its opinion in the instant case, the district court referred in a footnote to an earlier Ninth Circuit case of the same name: *Chua Han Mow v. United States*, 730 F.2d 1308 (9th Cir.1984), *cert. denied*, 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985). The district court correctly disregarded this earlier *Chua* opinion as unhelpful; although the petitioner there did indeed seek credit for time served in foreign custody, the court dismissed his petition because he had failed to exhaust his administrative remedies. 730 F.2d at 1313–14.

a sovereign other than the federal government.

## III

Both the Cuban and the United States governments (at different times, of course) have imprisoned Petitioner Jackson for the same hijacking. Jackson claims that federal law requires the U.S. government to give him credit for the time he spent in Cuban custody. To paraphrase the court in *Goode*, however, Jackson owed a debt to two separate sovereigns, each of which had a right to exact payment independently of the other. *See* 543 F.2d at 753. Thus, the district court's denial of Jackson's § 2241 petition is

AFFIRMED.