**Frank Michael KENDRICK, Appellant,**

**v.**

**Peter CARLSON,\* Warden, Appellee.**

**No. 91–1330.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1991.

Decided June 18, 1993.

---

\* During this litigation, Peter Carlson succeeded Joseph Bogan as Warden of the Federal Medical Center in Rochester, Minnesota. We have substituted Peter Carlson for Joseph Bogan pursuant to Federal Rule of Appellate Procedure 43(c).

Margaret Danielson, Madison, WI, argued, for appellant.

Henry Shea, Minneapolis, MN, argued (Jerome G. Arnold, Henry J. Shea and Wendy Wiggins on the brief), for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Frank Michael Kendrick appeals from the order of the District Court[1] adopting the report and recommendation of a magistrate judge[2] and denying Kendrick's 28 U.S.C. § 2241 (1988) petition seeking credit against his federal sentence for time Kendrick spent

1. The Honorable Harry H. MacLaughlin, Senior United States District Judge for the District of Minnesota.

2. The Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

imprisoned in the Netherlands Antilles. We affirm the judgment of the District Court.

## I.

In August 1983, Drug Enforcement Agency ("DEA") agents in Lima, Peru, received information that Kendrick and Richard Rankin were attempting to smuggle cocaine into the United States via Curacao in the Netherlands Antilles. The agents requested that authorities in the Netherlands Antilles search the men when they arrived on Curacao. On August 17, 1983, Curacao customs officers complying with this request uncovered a total of four kilograms of cocaine in Kendrick's and Rankin's luggage. Kendrick and Rankin were arrested, charged with drug trafficking offenses under the law of the Netherlands Antilles, and held in custody on Curacao pending trial.

In April 1984, Kendrick was convicted of importing cocaine in violation of the law of the Netherlands Antilles and received a five-year prison sentence. Rankin also was convicted and received a sentence of three and one-half years. Meanwhile, DEA agents in the United States continued to investigate Kendrick's and Rankin's drug trafficking activities. The agents discovered that Kendrick and Rankin were members of a loose-knit group that had imported hundreds of pounds of cocaine into the United States over a period of years. Federal prosecutors sought and obtained indictments against both men.

Authorities in the Netherlands Antilles cooperated closely with the DEA in its investigation, providing information and evidence to United States investigators and "loaning" Rankin to our government so that Rankin could testify for the United States and plead guilty to drug trafficking charges. When it came time to release Rankin, and later Kendrick, Curacao prison authorities placed the men on flights home to be met by members of the United States Marshal's Service. The marshals immediately took the men into federal custody.

Rankin was released from prison in the Netherlands Antilles on December 18, 1985; he received credit for the entire period of his incarceration in the Netherlands Antilles against his subsequent federal sentence. Kendrick was released from prison in the Netherlands Antilles on December 17, 1986. He subsequently pled guilty to operating a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1982) and received a twenty-four-year sentence. *United States v. Kendrick*, No. 86–CR–89–S (W.D.Wis. Apr. 6, 1987). Kendrick then brought this action seeking credit against his federal sentence for the forty months he was incarcerated in the Netherlands Antilles from August 17, 1983, to December 17, 1986.

The District Court adopted the magistrate judge's report and recommendation and denied Kendrick's petition. For reversal, Kendrick argues: 1) the magistrate judge was disqualified from considering Kendrick's case pursuant to 28 U.S.C. § 455(b)(3) (1988); 2) Kendrick is entitled to credit under 18 U.S.C. § 3568 (1982) (repealed effective 1987) for the time he spent incarcerated on Curacao since his incarceration there stemmed from the same conduct for which his federal sentence was imposed; 3) Kendrick is entitled to credit under 18 U.S.C. § 3568 for the time he spent incarcerated on Curacao since his incarceration there was the result of a "de facto detainer" lodged against him by the United States; and 4) even if Kendrick is not entitled to credit under 18 U.S.C. § 3568, Rankin was given credit for the time Rankin was incarcerated in the Netherlands Antilles and equal protection requires that Kendrick similarly receive credit.

## II.

Kendrick first argues that the magistrate judge to whom Kendrick's petition was referred should have disqualified himself pursuant to 28 U.S.C. § 455(b)(3) because the magistrate judge was employed as an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the District of Minnesota, the very office representing the government in this case, at the time Kendrick's petition was filed. Section 455(b)(3) provides that any justice, judge, or magistrate of the United States shall disqualify himself if "he has served in governmental employment and in such capacity participat-

ed as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."

■ Initially, we note that the rules concerning disqualification based on prior government service are less stringent than those that apply to prior private employment. Whereas § 455 requires that a judge disqualify himself based on prior governmental employment only if he served "as counsel ... concerning the proceeding," 28 U.S.C. § 455(b)(3), it provides that a judge disqualify himself "[w]here in private practice he served as lawyer in the matter in controversy, *or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter,*" *id.* § 455(b)(2) (emphasis added). Therefore a judge is not subject to mandatory disqualification arising from prior government service based on the mere fact that another lawyer in his office served as a lawyer concerning the matter. The issue, rather, is whether a judge, while in government employment, himself served as counsel in the case.

■ There is general agreement that a United States Attorney serves as counsel to the government in all prosecutions brought in his district while he is in office and that he therefore is prohibited from later presiding over such cases as a judge. *See, e.g., United States v. Di Pasquale,* 864 F.2d 271, 278–79 (3rd Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *Barry v. United States,* 528 F.2d 1094, 1099 n. 14 (7th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). The only case we have found on point, however, holds that this *per se* rule does not extend to disqualify a supervisory AUSA who had no involvement with a case brought in his district. *Di Pasquale,* 864 F.2d at 278–79. We agree with the *Di Pasquale* court that an AUSA without any involvement in a case brought by other attor-

neys in his office is not required to disqualify himself from presiding over such a case under 28 U.S.C. § 455(b)(3).

■ The case before us is a very different case from *Mixon v. United States,* 620 F.2d 486, 487 (5th Cir.1980) (per curiam), on which Kendrick relies. In that case, the magistrate judge, while in government employment, had himself represented the government concerning the case in controversy and thus clearly was required to disqualify himself under the statute. By contrast, in the action before us, there is no allegation or evidence that the magistrate judge had any involvement in Kendrick's case during the magistrate judge's time in government service. We therefore hold that the magistrate judge was not required to disqualify himself under § 455(b)(3).

### III.

Kendrick next argues that he is entitled to credit against his federal sentence for the time he was incarcerated in Curacao under 18 U.S.C. § 3568.[3] That statute provides in pertinent part:

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.

*Id.* Kendrick reasons that the conduct underlying his conviction in the Netherlands Antilles is the same conduct that supports the federal continuing criminal enterprise offense to which he pled guilty, that the time he spent incarcerated in the Netherlands Antilles is thus time spent "in custody in connection with the offense or acts for which

---

**3.** 18 U.S.C. § 3568 has been repealed and does not apply to offenses committed after November 1, 1987. *See* Sentencing Reform Act of 1984, Pub.L. No. 98–473, §§ 212(a)(2), 235(a)(1), 98 Stat.1987, 1987, 2031, *as amended by* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, sec. 4, § 235(a)(1), 99 Stat. 1728, *as amended by* Sentencing Act of 1987, Pub.L. No. 100–

182, sec. 2(a), § 235(a)(1), 101 Stat. 1266. Whether a prisoner who committed an offense after that date receives credit for time spent in custody is governed by 18 U.S.C. § 3585 (1988). Because the offense to which Kendrick pled guilty occurred prior to November 1, 1987, Kendrick's case is governed by § 3568.

[his federal] sentence was imposed," and that he therefore is entitled to receive credit against his federal sentence for that time. We disagree.

■ Section 3568 does not explain when custody is "in connection with the offense or acts for which sentence was imposed." It is clear, however, that time spent serving a prison sentence imposed by a sovereign other than the federal government (whether that sovereign be a state or a foreign nation) can not be time spent in custody in connection with the *offense* for which a federal sentence is imposed. Section 3568 provides that "offense," as used in the section, means any criminal offense that is "in violation of an Act of Congress and is triable in any court established by Act of Congress." *Id.* Incarceration that is due to a violation of the law of a foreign sovereign clearly does not fit this definition since it is not time spent in custody in connection with a violation of an act of Congress triable in a court established by an act of Congress. *See Jackson v. Brennan,* 924 F.2d 725, 727 (7th Cir.1991).

■ The question then is whether the fact that § 3568 also provides for credit for custody in connection with the *acts* for which a federal sentence was imposed entitles a person convicted of violating a foreign sovereign's laws to receive credit against a federal sentence arising out of the same conduct. The applicable version of § 3568 was enacted as part of the Bail Reform Act of 1966, Pub.L. No. 89–465, § 4, 80 Stat. 214, 217. The words "or acts" were added to § 3568 as a relatively late amendment, *see Gilbert v. United States,* 299 F.Supp. 689, 695–96 (S.D.N.Y.1969), regarding which the House Report stated:

> The purpose behind this amendment is to cover a condition where the defendant may have been arrested for a crime but subsequently is convicted of a lesser crime; thus, under the amendment, even though convicted of a lesser crime, he is given credit for the time spent in custody while awaiting trial on the charge of a greater crime. It would also permit the giving of credit for time spent in custody while awaiting trial where a defendant may have been originally arrested and held in custody on a State charge and eventually turned over to the Federal Government for prosecution of a Federal violation.

H.R.Rep. No. 1541, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.C.C.A.N. 2293, 2294–95.

This legislative history suggests that the insertion of the phrase "or acts" was intended to ensure that defendants received credit for pretrial custody, even if arrested on a charge slightly different from the offense of ultimate conviction, and even if originally arrested and held in custody by another sovereign for an offense subsequently prosecuted as a federal crime. Nothing in the statute or the legislative history suggests, however, that Congress believed that the addition of the words "or acts" would eliminate the ability of the federal government to impose punishment for a violation of federal law consecutive to any punishment imposed by another sovereign based on the same acts. *See also Gilbert,* 299 F.Supp. at 695–96 (noting that Senator Ervin, one of the bill's sponsors, indicated that the amendment inserting the phrase "or acts" was technical rather than substantive).

Ultimately, however, we do not base our interpretation of § 3568 on the quicksand of legislative history. Absent a much clearer expression of congressional intent in the language of the statute itself, we would not be justified in reading into § 3568 the drastic limitation on the dual sovereignty principle that Kendrick would have us find there. We are satisfied that the statute requires more than a mere factual relationship between the custody by another sovereign for which a defendant seeks credit and the defendant's federal conviction. The Seventh Circuit recently held that § 3568 mandates that prisoners receive jail-time credit "only when the pre-sentence custody is federal custody or non-federal custody that was caused or sustained by the federal government." *Jackson,* 924 F.2d at 728. We agree with this interpretation of the statute and hold that a defendant can not be considered to be "in custody in connection with" the acts underlying a federal sentence unless the custody is federal custody or is otherwise attributable to the federal government.

The case law uniformly follows the rule that the above analysis suggests, and holds

that a prisoner is not entitled to credit against a federal sentence for time spent serving a prior state or foreign sentence that arose out of the same conduct. *See, e.g., Jackson,* 924 F.2d 725; *United States v. Shillingford,* 586 F.2d 372 (5th Cir.1978). As the Tenth Circuit stated in a widely quoted case addressing this precise issue: "[The defendant] owed a debt to two separate sovereigns, each of which had a right to exact its debt independently of the other." *Goode v. McCune,* 543 F.2d 751, 753 (10th Cir.1976). We agree with this uniform body of case law and hold that under § 3568 a prisoner is not entitled to credit against a federal sentence for time spent serving a sentence imposed by another sovereign for a violation of that sovereign's laws, even though both sentences stem from the same conduct.

■ The court below determined that Kendrick received credit against his foreign sentence for the entire forty-month period he was incarcerated in the Netherlands Antilles. In other words, the entire forty-month period constituted time during which Kendrick was serving a foreign sentence. Kendrick challenges this determination, arguing that "[w]ithout an evidentiary hearing, it is impossible to determine whether [he] was, in fact, given credit towards his Curacao sentence" for the time he spent in custody in the Netherlands Antilles prior to the date of his final sentencing. Appellant's Brief at 14. We disagree. First, Kendrick's 28 U.S.C. § 2241 petition does not allege that Kendrick was not given full credit against his foreign sentence for the entire forty months of his incarceration in the Netherlands Antilles. Even on appeal Kendrick fails to assert that he did not receive credit for this forty-month period against the sentence imposed by the Netherlands Antilles; instead, he claims only that it is impossible to determine whether he received full credit without a hearing. This halfhearted claim does not entitle Kendrick to an evidentiary hearing. *See Lewis v. United States,* 585 F.2d 915, 917 (8th Cir. 1978) (holding that, in order to obtain an evidentiary hearing, a 28 U.S.C. § 2255 petitioner must allege sufficient facts to entitle him to relief).

Second, even if we were to construe Kendrick's argument as an assertion that he did not receive credit on his Netherlands Antilles sentence for the entire forty-month period at issue, the record does not show any genuine factual dispute that would entitle Kendrick to an evidentiary hearing. The federal district judge who accepted Kendrick's plea and imposed the sentence Kendrick now is serving specifically found that "[o]n his five year [Netherlands Antilles] sentence, Mr. Kendrick served a total of 40 months and one day, from 8/17/83 through 12/17/86." *United States v. Kendrick,* No. 86–CR–89–S, Order to Supplement Presentence Investigation, at 2 (W.D.Wis. June 23, 1988). That judge had an ample evidentiary basis for resolving this issue and his finding is entirely supported by the record. Because the record conclusively demonstrates that Kendrick is not entitled to relief, no evidentiary hearing is necessary. *See United States v. Johnson,* 751 F.2d 291, 294 (8th Cir.1984) (holding that a 28 U.S.C. § 2255 petitioner was not entitled to an evidentiary hearing where the record lacked "any credible showing" of the existence of an asserted sentencing agreement with the government), *cert. denied,* 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 275 (1985).

■ In short, Kendrick received credit against the sentence imposed on him by the Netherlands Antilles for the entire period he was incarcerated in that nation. As separate sovereigns, the Netherlands Antilles and the United States each is entitled to punish Kendrick for any of his drug trafficking activities that fall within its jurisdiction, even if this results in Kendrick being punished twice for the same conduct.[4] Section 3568 does not vitiate this attribute of sovereignty. Kendrick therefore is not entitled to receive credit under § 3568 against his federal sentence for the forty months he spent serving his sentence on the conviction in the Netherlands Antilles on a theory that he already has been punished for this conduct.

## IV.

■ Alternatively, Kendrick argues that he is entitled to credit under § 3568 for the time he spent in presentence custody in the

---

4. Much of Kendrick's argument is directed towards showing that the acts for which the Netherlands Antilles and the United States have punished him are the same. Because of our holding, we need not, and do not, decide whether this is in fact so.

Netherlands Antilles on the separate and distinct theory that the confinement resulted from a "de facto detainer" lodged against him by the United States. *See United States v. Haney,* 711 F.2d 113 (8th Cir.1983) (holding that a prisoner denied bail by state authorities because of an outstanding federal detainer is entitled to credit on his federal sentence for time spent in state custody as a result of the detainer). The District Court denied this claim for failure to exhaust administrative remedies; we review its decision for abuse of discretion. *See West v. Bergland,* 611 F.2d 710, 720 (8th Cir.1979), *cert. denied,* 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).

Federal prisoners seeking jail-time credit under § 3568 must exhaust administrative remedies before seeking habeas corpus relief. *See Leighnor v. Turner,* 884 F.2d 385, 387 (8th Cir.1989). Nowhere in any of the applications for jail-time credit that Kendrick filed with the Bureau of Prisons ("BOP") did Kendrick assert his de facto detainer claim. (The BOP's initial denial and first denial on appeal of Kendrick's request for credit do state that, because the United States does not have an extradition treaty with the Netherlands Antilles, no detainer was filed against Kendrick; however, these references to a formal detainer have nothing to do with Kendrick's de facto detainer claim.) Kendrick has not demonstrated any special circumstances that would lead us to conclude that exhaustion should not be required in this case. Therefore we hold that the District Court did not abuse its discretion in denying this claim.

Although we are affirming the District Court's denial of Kendrick's claim for failure to exhaust administrative remedies, and although both parties seem to assume that Kendrick will present this claim administratively, we note that the claim appears to us to be patently meritless. The fact that Kendrick received credit against his foreign sentence for the entire period he was in custody on Curacao would preclude him from also receiving credit against his federal sentence for any portion of that period of time, even if Kendrick originally was denied bail because of a so-called de facto detainer. *See, e.g., Shields v. Daggett,* 460 F.2d 1060 (8th Cir.1972) (per curiam).

## V.

Finally, Kendrick argues that even if he is not entitled to credit against his sentence under § 3568, he is entitled to credit because Rankin received credit against Rankin's federal sentence for the time Rankin was incarcerated in the Netherlands Antilles and equal protection demands that Kendrick be treated similarly. We disagree. The evidence shows that Rankin was not entitled to credit against his sentence and that he was awarded credit by mistake. As shown in Part III of this opinion, § 3568 was not intended to provide credit to a prisoner for time the prisoner was incarcerated by a foreign sovereign for violating that sovereign's laws. Consistent with this, the BOP's program statement implementing § 3568 clearly provides that credit "will not be given for any portion of time spent serving another sentence, either federal or non-federal." United States Dept. of Justice, Federal Prison System, Program Statement No. 5880.24 ¶ 5(b)(2) (Sept. 5, 1979). Moreover, the government has produced evidence that the person who handled Rankin's case concedes that he was mistaken in awarding Rankin credit since Rankin "was serving time for a foreign offense" in the Netherlands Antilles. Memorandum from D.M. Frederiksen, ISM Supervisor, Federal Correctional Institute, Sandstone, Minn. to File (Feb. 5, 1989).

The fact that Rankin received credit as a result of a mistake is fatal to Kendrick's equal protection claim, since "[m]ere error or mistake in judgment when applying a facially neutral statute does not violate the equal protection clause." *E & T Realty v. Strickland,* 830 F.2d 1107, 1114 (11th Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988); *see also Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Rather, a plaintiff asserting an equal protection violation based on unequal application of a facially neutral statute must show intentional discrimination. *Snowden,* 321 U.S. at 8, 64 S.Ct. at 401. Were the rule otherwise, if government decisionmakers "erroneously applied [a statute] in a single case, they could never again apply it correctly without violating equal protection." *E & T Realty,* 830 F.2d at 1114. Kendrick has neither alleged nor produced any evidence of intentional dis-

crimination against him by the BOP and therefore he was not deprived of his right to equal protection.

## VI.

For the reasons set forth above, the judgment of the District Court denying Kendrick's 28 U.S.C. § 2241 petition is affirmed.