Edward R. HUGHES, Petitioner,

v.

J.E. SLADE, Warden, Respondent.

No. CV 03–3857–MLG.

United States District Court,
C.D. California,
Western Division.

Aug. 31, 2004.

Edward R. Hughes, Adelanto, CA, pro se.

Assistant U.S. Attorney LA–CV, Patrick R. Fitzgerald, AUSA—Office of U.S. Attorney, Los Angeles, CA, Denise Willett, AUSA—Office of U.S. Attorney, Riverside, CA, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

GOLDMAN, United States Magistrate Judge.

### I. *Factual and Procedural Background*

Petitioner is a federal prisoner who is currently serving a twenty year sentence at the Federal Correctional Institute in Victorville, California, having been convicted of Interference with Commerce by Threat or Violence, 18 U.S.C. § 1951, in the United States District Court for the District of Rhode Island in 1998. On May 30, 2003, he filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the United States Bureau of Prisons' denial of sentence credit for time served in a Mexican jail while awaiting extradition to the United States. The underlying facts are as follows.[1]

In February 1994, Petitioner and a business associate, Brian McCarthy, traveled to Mexico, ostensibly to conduct business on behalf of Automation Software, Inc ["ASI"], a company based in Rhode Island, of which both men were officers. On February 8, 1994, Petitioner returned to ASI's office in the United States with what he claimed was a "ransom" demand. Peti-

---

1. These facts are taken from the opinion of the United States Court of Appeals for the First Circuit affirming Petitioner's conviction of the offense for which he is currently incarcerated. *United States v. Hughes,* 211 F.3d 676, 679 (1st Cir.2000). A brief summary of these facts is provided to enable an understanding of the claims presented here.

tioner told company officials that McCarthy had been abducted in Mexico on February 6, 1994. He informed them that the kidnappers were demanding a ransom of one million pesos, and that Petitioner was to return with the money or McCarthy would be killed. On February 7, 1994, while preparations were being made to deliver the ransom, but before any ransom had been paid, McCarthy's body was found in a shallow grave on a road between Mexico City and San Luis Potosi. On February 9, 1994, Petitioner resigned his position with ASI. He sold his Rhode Island home in March 1994 and returned to Mexico. Nine millimeter shell casings found near McCarthy's body were later determined to match shell casings found on Petitioner's property in Rhode Island. Firearm transaction records revealed that Petitioner had purchased a nine millimeter handgun in September 1993.

On May 17, 1994, a warrant for Petitioner's arrest was issued by the United States District Court for the District of Rhode Island. The warrant was based on a complaint charging Petitioner with attempted extortion in violation of 18 U.S.C. § 1951. On June 15, 1994, the United States submitted an extradition request to the Mexico Secretariat of Foreign Relations asking that Petitioner be returned to the United States to stand trial on federal extortion and related charges.

On July 7, 1994, Petitioner was taken into custody by Mexican officials. On October 10, 1994, the Government of Mexico granted the United States' request to extradite Petitioner. However, Petitioner was not immediately returned to the United States. Rather, he was detained in Mexico. According to a letter dated May 6, 1998, from the Deputy Attorney General's Office for International Affairs in Mexico, in October 1994, Petitioner had been made the subject of criminal proceedings in Mexico arising from the murder of Brian McCarthy. (Resp.'s Opposition, Exh. 3, at 1). In June 1995, the United States was notified by the Mexican Foreign Affairs Secretary that Petitioner's extradition would be deferred until he completed his "final sentence" on the Mexican charges. (Resp.'s Supp. Response, Exh. 4). On April 29, 1997, Petitioner was acquitted of the murder charge in Mexico. He was released on bail on July 4, 1997, but was required to remain under house arrest while the prosecution's appeal of his acquittal was pending; a procedure apparently permitted under Mexican law. On March 5, 1998, the decision of the trial court was reversed by a Mexican appellate court. Petitioner was found guilty of McCarthy's murder and sentenced to 19 years in prison. Petitioner then filed an "Amparo" suit, somewhat akin to a habeas corpus proceeding, and remained free on bond pending the resolution of that action. In August 1998, the Amparo suit was denied. By that time, however, Petitioner was back to the United States.[2] Petitioner was never returned into the custody of Mexican authorities, and remains a fugitive from Mexican justice.

Meanwhile, on September 11, 1996, an indictment was returned in the District of Rhode Island charging Petitioner with Interference with Commerce by Threat or Violence, in violation of 18 U.S.C. § 1951. An arrest warrant was issued that same day. In May 1998, Petitioner surrendered himself to federal authorities in Rhode Island. On September 24, 1998, following a

---

**2.** Sometime after his release on bail by Mexican authorities in 1997, Petitioner left Mexico. It is unclear from the record as to whether he absconded or was returned to the United States under the extradition warrant. He was taken into federal custody in May 1998 and held without bail pending his federal extortion trial.

jury trial, Petitioner was convicted of the charge contained in the indictment. On February 8, 1999, he was sentenced to 20 years imprisonment to be followed by three years of supervised release. Petitioner appealed his conviction and sentence. On May 18, 2000, the United States Court of Appeals for the First Circuit affirmed the judgment in a published decision. *United States v. Hughes*, 211 F.3d 676 (1st Cir.2000).

■ On September 26, 2002, Petitioner submitted an administrative remedy request to the United States Bureau of Prisons ("BOP"), seeking credit for the time spent in Mexican custody between July 7, 1994 and July 4, 1997. The request was denied on October 10, 2002. Petitioner then exhausted his administrative remedies by appealing the denial, first, to the Regional Director of the BOP, and then to the BOP Central Office, which denied his appeal on January 16, 2003. Petitioner filed this petition on May 30, 2003, pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prison's calculation of his presentence credits.[3] Petitioner continues to claim here that he is entitled to credit against his federal prison sentence for time spent in official custody in Mexico from July 7, 1994 to July 4, 1997.

On July 31, 2003, Respondent filed an Opposition to Petitioner's § 2241 motion. In that opposition, Respondent contended that Petitioner was not entitled to any custody credit for the period of time at issue because he was not "exclusively in custody on federal charges relating to the sentence he is currently serving." (Opposition at 4). Respondent initially argued that Petitioner had been arrested on local

murder charges in Mexico on July 7, 1994, rather than under the United States' extradition request, and was held in Mexican custody on those charges through July 4, 1997. (See Opposition, Exh. A., Decl. of Alan Ray). Respondent thus alleged that Petitioner was not entitled to credit on his federal sentence for any of the time he spent in Mexican jails.

On September 4, 2003, the Court ordered Respondent to provide a supplemental opposition describing the circumstances of Petitioner's arrest on July 7, 1994 in Mexico, and its relation to the extradition request made by the United States, because it appeared to the court that Petitioner's arrest on that day was based upon the extradition request by the United States and not on the local murder charges. On February 23, 2004, Respondent filed the supplemental response, in which it was acknowledged that Petitioner was held by Mexican authorities exclusively at the request of the United States from July 7, 1994 to October 10, 1994. According to Respondent, Petitioner was not charged with murder under Mexican law until October 10, 1994. The Bureau of Prisons therefore awarded Petitioner credit against his federal prison sentence for the period of time between July 7, 1994 and October 10, 1994. Respondent maintains, however, that Petitioner is not entitled to federal prison credit for any of the remaining time, from October 10, 1994 to July 4, 1997, that he spent in Mexican custody because he was being prosecuted and held by Mexican authorities on the murder charges and, therefore, was not exclusively in federal custody.

**3.** It is well established that a § 2241 petition is the appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been exhausted. *See, e.g., Rogers v. United States,*

180 F.3d 349 (1st Cir.1999). As Petitioner is currently confined at the Federal Correctional Institution in Victorville, California, venue is proper in the Central District of California.

On March 15, 2004, Petitioner filed a response to the supplemental brief together with a motion styled "Objection to Government's Response," in which he contends that Respondent has presented a "new argument" which should not be considered by the Court.[4] Petitioner steadfastly maintains that he is entitled to credit against his current sentence for the period of time from October 10, 1994, to July 4, 1997. Briefing is complete and the matter is ready for decision.

## II. Discussion and Analysis

Petitioner claims that under the plain terms of 18 U.S.C. § 3585(b)(2) he is entitled to credit against his federal sentence for time spent in Mexican custody. For the reasons set forth below, the Court concludes that Petitioner is correct.

**(A) Petitioner is Eligible for Federal Sentence Credit Under 18 U.S.C. § 3585(b)(2) for the entire time spent in Mexican custody.**

18 U.S.C. § 3585(b)(2) provides:

Credit for Prior Custody. A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

■ . In order to be awarded credit for the entire period of time spent in Mexican custody under § 3585(b)(2), Petitioner must show: (1) he was in official detention during the relevant time period; (2) the period of detention for which credit is sought was served as a result of an **arrest** that occurred **after** the commission of the offense for which he is now serving a federal sentence; (3) the detention resulted from an arrest for some other charge; and (4) the time period claimed has not been credited against another sentence. Petitioner contends that he has satisfied each of these elements.

It is undisputed that Petitioner was detained by Mexican authorities from July 7, 1994 to July 4, 1997, in the "Centro de Readaptacion Social" in Los Mochis, Sinaloa, which Petitioner states is the equivalent of a United States prison. (Petition for Writ of Habeas Corpus, Exh. G, Order of Detention, July 7, 1994). The arrest and detention took place after February 8, 1994, the date of the commission of the offense for which he is now serving a federal sentence. It is also undisputed that the period of time Petitioner spent in Mexican detention between October 10, 1994 and July 4, 1997, resulted from an arrest for the murder of Brian McCarthy, which is not the offense for which Petitioner was indicted and for which he was subsequently convicted in the United States.[5] Thus, Petitioner has demonstrated that he has met the first three elements of the statute.

---

4. Because Respondent's supplemental brief contains no new legal arguments, but merely provides additional factual information regarding the circumstances of Petitioner's arrest in Mexico in 1994, Petitioner's claim that Respondent has presented a "new argument" is rejected.

5. It appears that but for the charges brought by Mexican authorities, Petitioner would have been returned to the United States under the extradition warrant and if detained without bond, would have received credit against his current sentence for that period of time between his initial appearance and date of sentence.

The disputed element is whether Petitioner received credit on his 19–year Mexican sentence for the time period at issue. Neither party has established to any degree of certainty whether or not credit has been awarded by Mexican authorities. However, the BOP denied Petitioner's claim for administrative relief, not upon evidence demonstrating that credit was in fact awarded on the Mexican sentence, but under its internal guidelines governing the award of credit for presentence custody in a non-federal jurisdiction. (See Petition for Writ of Habeas Corpus, Exh. A., Response to Request for Administrative Remedy). Those guidelines state:

> Ordinarily, if a state sentence is imposed, either before or after the time that the federal sentence commences, it is presumed that the state has awarded, or will award, presentence time off the state sentence for time spent in state custody in connection with the state offense.

U.S. Dept. of Justice, Bureau of Prisons Program Statement No. 5880.28 I.3(c)(1)(b)(Feb. 14, 1997). Assuming that this guideline is applicable to foreign sentences as well as state sentences, Petitioner's 19–year prison sentence in Mexico triggered the presumption that credit for the time spent in Mexican custody has been or will be awarded toward the Mexico prison sentence and therefore, credit against his current federal sentence was not warranted.[6]

However, the same guidelines provide that an inmate may challenge this presumption. The guidelines provide, in relevant part, that prior to awarding credit based upon such a challenge, bureau staff shall:

> [T]horoughly investigate[ ] and verif[y] [the information supporting such a claim] before credit may be given.... The verification effort will consist of one communication (with written documentation that contact was made, either in the form of a copy of the letter, fax, or teletype message, or by documenting the phone call) and one following communication if no response is received. (*Id.*)[7]

■ In order to rebut the presumption, Petitioner submitted an affidavit asserting that the Mexican authorities do not make a determination as to whether to grant credit for pretrial incarceration prior to a prisoner's entry into the prison system. (Pet's Memo of Points & Authorities at 11–12; Pet's Affidavit, attached as Exh. I to Peti-

---

6. The Court will assume that the credit presumption created by the BOP's Program Statement is an interpretive rule, not an amendment of an existing legislative rule, in this case 18 U.S.C. § 3585(b)(2), which would have obliged the BOP to follow the requirements of the Administrative Procedure Act ["APA"], 5 U.S.C. §§ 551 et seq., in promulgating the new guidelines. *See Gunderson v. Hood,* 268 F.3d 1149, 1154 (9th Cir.2001)(stating that an administrative rule that "impose[s] new rights or obligations by changing an existing law ... must follow the applicable procedures of the APA"). The Court will further assume that the presumption itself is valid. *See Holland Livestock Ranch v. United States,* 714 F.2d 90, 92 (9th Cir.1983)(stating that while administrative agencies may create evidentiary presumptions, a "sound factual connection" must exist between facts giving rise to presumption and facts then presumed).

7. The BOP guidelines also provide that "failure by the non-federal government to grant official detention credit ... can be determined" if (a) the non-federal charges were dismissed; (b) non-federal probation was granted; or (c) the federal and non-federal terms are concurrent. U.S. Dept. of Justice, Bureau of Prisons Program Statement No. 5880.28 I.3(c)(1)(b)(Feb. 14, 1997). None of these conditions is relevant here. However, the guidelines do not make these conditions the exclusive means by which a failure to grant credit may be determined.

tion for Writ of Habeas Corpus). Petitioner declares that prison credit in Mexico is awarded only when release dates are computed by prison authorities, and that, in turn, those release dates are determined only when a prisoner begins serving his sentence. Since Petitioner never started serving his sentence, no release date was determined, and no presentence detention credits were awarded. Petitioner further declares that there exists no provision under Mexican law which would permit an award of such credit.

Despite the BOP's program statement requiring that a claim to pre-sentence credit be thoroughly investigated and verified, Respondent has produced no evidence that any such investigation was conducted as to whether Mexico has awarded Petitioner credit for the period of time he served in pre-sentence custody. Although Respondent has provided a copy of a memorandum from a BOP official investigating Petitioner's claim for prison credit, and a BOP reply to that inquiry, neither memorandum addresses the critical issue of whether Mexico granted Petitioner credit for pre-sentence custody against his 19–year sentence. (See Resp's Opposition, Exhs 6 and 7). Nor has Respondent produced any evidence to rebut Petitioner's claim that, under the Mexico prison system, he could not have received prison credit before commencement of his Mexico sentence.

Rather, in its initial denial of Petitioner's claim for administrative relief, the BOP stated:

[T]he time spent in pre-trial custody from July 7, 1994, through June 30, 1997, *will be applied* to your Republic of Mexico sentence ... In your case a notify has been lodged against

you in reference to your Mexico Sentence in which *you should receive* prior custody credits for the time spent in custody in Mexico prior to receiving your Mexico Sentence.

(Request for Administrative Remedy, Warden's Response, attached as Exh. A, Petition for Writ of Habeas Corpus)(emphases added).

Not only is this statement insufficient on its face to bar Petitioner's eligibility for custody credit, it tends to support Petitioner's claim. The language of § 3585(b) is straightforward. It provides that a prisoner "shall be given credit ... for time ... that *has not been* credited against another sentence." (Emphasis added). By contrast, Respondent's use of "should receive" clearly implies that Petitioner *has not yet received* this credit. Moreover, despite being given a substantial amount of time to marshal the facts in support of his claim, Respondent has not demonstrated, through reference to Mexican statutes or declarations from Mexican officials, that Petitioner has been awarded credit or will be awarded credit against his Mexican prison sentence once he is returned to serve that sentence.[8]

Accordingly, the Court finds that Petitioner has rebutted the presumption created by the BOP program statement, has demonstrated he has not received credit toward "any other sentence" for the time he spent in detention in Mexico between October 1994 and July 1997, and that under the plain meaning of § 3585, he is

8. *See also United States v. Smith,* 318 F.Supp.2d 875, 878 (C.D.Cal.2004)(stating, in holding that prisoner is entitled to credit against federal sentence under § 3585(b) for pre-sentence time served in state custody, that "there has been no allegation or evidence presented that the [time served has] been credited against another sentence. The BOP's application of § 3585(b) conflicts with the plain language of the statute, and ignores the *mandatory nature* of the pre-sentence custody credit")(emphasis added).

entitled to credit for the entire period of time served in Mexico.

**(B) *Petitioner ·Need Not Have Been Exclusively in Federal Custody in Order to Receive Credit Under 3585(b)(2).***

Respondent next contends that Petitioner is not entitled to credit under 18 U.S.C. § 3585(b) because he "was not exclusively in custody on federal charges relating to the sentence he is currently serving," (Resp's Memo of Points & Authorities at 5), and that "[c]ourts have consistently held that federal prisoners are not entitled to credit against a federal sentence for time spent serving a state or foreign sentence even if the sentence arose out of the same conduct as the federal offense." (*Id.* at 6).

In support of this·proposition, Respondent relies upon a line of cases beginning with *Goode v. McCune,* 543 F.2d 751 (10th Cir.1976), which hold that where two "separate sovereigns" are involved, "[a]n act denounced as a crime by both federal and state sovereignties is an offense against the peace and dignity of both, and may be punished by each." *Id.* at 753 (quoting *United States v. Jackson,* 470 F.2d 684, 689 (5th Cir.1972)). Thus, when a criminal defendant has committed an offense that is punishable in either of two separate and distinct judicial systems, he will be entitled to federal credit only if "involvement of the federal government . . . has [had] an effect

on the time [he] spends in state custody." *Id.*

In *Jackson v. Brennan,* 924 F.2d 725, 728 (7th Cir.1991), the court applied this "dual sovereign" principle in denying a habeas corpus petition that sought federal sentence credits under 18 U.S.C. § 3568, the predecessor statute to 18 U.S.C. § 3585, for time spent in Cuban custody between 1972 and 1980. The court stated that " § ·3568 does not require credit against a federal sentence for pre-sentence state custody (unless . . . the state custody was at the behest of the federal government)." In addition, the court explained that the "plain language of the statute" did not support the entitlement to credit because the term "offense" was explicitly limited to "violations of federal law triable in the federal courts." ·*Id.* at 727; *see also United States v. Winter,* 730 F.2d 825, 826 (1st Cir.1984)(affirming dismissal of petition because· § 3568 does not provide federal "credit for time spent in state prison on an unrelated charge" unless confinement was exclusive product of federal law-enforcement officials).

However, Respondent fails to take into account that these decisions were premised entirely on the provisions of 18 U.S.C. § 3568, which was substantially modified in 1984 when Congress enacted 18 U.S.C. § 3585. In *United States v. Wilson,* 503 U.S. 329, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), the United States Supreme Court noted that in 1984 Congress had amended the provisions of the predecessor statute, 18 U.S.C. § 3568,[9] in enacting § 3585(b):

---

9. That statute, 18 U.S.C. § 3568, provided, in relevant part:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward the service of his sentence *for any days spent in custody in connection*

*with the offense or acts for which sentence was imposed.* As used in this section, the term "offense" means any criminal offense, other than an offense triable by court-martial, military commission, provost court, or ·other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress.

(Emphasis added).

Congress enlarged the class of defendants eligible to receive credit. Under the old law, a defendant could receive credit only for time spent in custody in connection with "the offense ... for which sentence was imposed." Under the new law, a defendant may receive credit both for this time and for time spent in official detention in connection with "any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed."

*Id.* at 337, 112 S.Ct. 1351.

▇ The amended statute, which became effective in 1987, renders the *Goode–Jackson* line of cases inapplicable here for two reasons. First, § 3585(b)(2) provides that credit may be awarded for detention in connection with any charge, not just "custody in connection with the offense or acts for which sentence was imposed." Second, the language defining "offense" as being an offense "in violation of an Act of Congress" has been removed, and replaced by the language which allows credit for "any time spent in official detention ... as a result of any other charge...." It appears, therefore, that federal involvement is no longer a triggering requirement of § 3585(b)(2). Respondent has not cited a single judicial decision that requires federal involvement in order for a defendant to be eligible for sentence credit under the terms of § 3585(b)(2).

Very few published decisions have construed the provisions of 18 U.S.C. § 3585(b)(2).[10] In *United States v. Mahmood,* 19 F.Supp.2d 33 (E.D.N.Y.1998), the district court denied the defendant's motion for reconsideration of his sentence under § 3585(b) because he had already received credit for time spent in state custody toward his state sentence, without ever indicating whether the decision rested on the provisions of subsection (b)(1) or (b)(2). In *United States v. Merritt,* 782 F.Supp. 12 (D.Mass.1992), the court denied a motion requesting federal credit for time served in state prison. The court explained that "[i]n order to receive credit for the state time served ... [the defendant] must satisfy the requirements of either section 3585(b)(1) OR (b)(2), AND she must not have already received credit towards some other sentence for the time she was held in custody." *Id.* at 13. In rejecting the defendant's claim for credit under § 3585(b)(2), the *Merritt* court found that she did not meet the requirements of that section because she was in state custody for an offense for which she was arrested *before* the commission of the federal offense and because she had already received credit toward her state sentence for the time served in state custody. *Id.* at 14.

The decision that most closely resembles this case on its facts is an unpublished opinion issued by the Second Circuit. *United States v. Efrosman,* 62 Fed.Appx. 24, 2003 WL 1611427 (2d Cir.2003). In

---

**10.** Several decisions have followed those cases decided prior to the enactment of § 3585 in construing § 3585(b)(1), which makes a defendant eligible for federal credit when he or she was in custody as a result of the federal offense for which the defendant was later convicted. *See, e.g., Jimenez v. Warden,* 147 F.Supp.2d 24 (D.Mass.2001)(rejecting claimed entitlement to credit under § 3585(b)(1) when defendant in state custody on offense for which credit was given); *Unit-*

ed States v. Miller, 49 F.Supp.2d 489 (E.D.Va.1999)(denying petitioner credit where state court imposed concurrent sentence that federal court declined to accept under theory of dual sovereigns); *United States v. Killion,* 788 F.Supp. 1165 (D.Kan.1992)(rejecting claim for federal credit for time spent in state custody under federal detainer because defendant had already received state credit for this time).

*Efrosman,* the petitioner had been incarcerated in France on charges unrelated to his subsequent federal sentence. The Second Circuit denied his petition requesting credit for that time chiefly on the basis that he had already received credit toward his French prison sentence for the time spent in detention. The court made no mention of any requirement that the petitioner be in exclusive federal custody in order to receive credit under the statute.

In short, the decisions that have denied relief under § 3585(b)(2) have done so because the petitioner was not eligible for credit under a straightforward application of the language of the statute; not because of an absence of federal involvement in the custody for which credit was sought. By contrast, entitlement to federal prison credit has been found under § 3585(b)(2) where a prisoner served time in state custody on charges unrelated to his federal sentence, and where no federal law enforcement involvement was alleged. *United States v. Richardson,* 901 F.2d 867, 870 (10th Cir.1990).

The conclusion that Petitioner is entitled to federal prison credit under § 3585(b)(2), and that the "dual sovereign" principle does not apply to this section, is supported by the BOP's own guidelines interpreting the statute. In its program statement discussing § 3585(b)(2), the BOP states that:

> Prior Custody Credit will be given for time spent in official detention as the result of any federal, state or foreign arrest which is not related to, yet occurred on or after the date of the federal offense (as shown on the judgment and commitment) for which the [federal] sentence was imposed; provided it has not been credited to another sentence. The language in this Section eliminates any need for a federal detainer to be on file or bail to be set on the state or foreign charges as a prerequisite for applying

such prior custody time credit toward the federal sentence.

U.S. Dept. of Justice, Bureau of Prisons Program Statement No. 5880.28 I.3(c)(1)(b)(Feb. 14, 1997). The final sentence of the section evinces the BOP's recognition that § 3585(b)(2) does not contain, either expressly or impliedly, a requirement that the state or foreign custody have been caused by the actions of federal officials in order to grant credit for that time in custody.

Because § 3585(b)(2) does not contain a requirement that the non-federal custody be a product of action by federal law enforcement agents in order for that time in custody to be credited against a subsequent federal prison sentence, Petitioner's claim for habeas relief is not barred under this theory. Rather, the plain language of the statute clearly demonstrates that a prisoner is entitled to credit for time spent in official detention as a result of "any charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed" that has not been credited against another sentence.

### III. *Conclusion.*

For the reasons stated above, the court finds that Petitioner meets the conditions of 18 U.S.C. § 3585(b)(2), and is, therefore, entitled to credit against his federal prison term for time spent in Mexican custody on domestic criminal charges. There has been no showing that he received credit against his Mexican sentence for the time spent in Mexican custody. The Respondent's speculative anticipation that such credit might be given sometime in the future does not suffice to meet the requirements of § 3585(b)(2). Accordingly, the petition for writ of habeas corpus is **GRANTED.** The Bureau of Prisons shall recalculate the length of Petitioner's feder-

al prison term to reflect pre-sentence custody credit for the period from October 10, 1994 through July 4, 1997.